## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### SELDEN & OTHERS v. CAMP & OTHERS.

95  527
c109  685

JANUARY 20, 1898.

Absent, Cardwell, J.

1. CONTRACTS TO PAY MONEY—*Time not of Essence of Contract—Relief—Leases—Right of Renewal—Condition Precedent.*—Mere default in the payment of money at a stipulated time generally admits of compensation, and hence the time of payment is rarely of the essence of the contract, and when time is not of the essence of the contract, and compensation can be made, courts of equity can grant relief even against the failure to perform punctually conditions precedent. But such relief will not be granted at the instance of a party who has been guilty of gross negligence. In the case of a lease for ninety-nine years, renewable forever, upon payment of an annual ground rent on a given day, each year, and taxes, and on the payment of one year's rent extraordinary and the costs of preparing contract, at the end of the first period, with right of the landlord to re-enter at any time during the term for default in payment of rent for six months, and hold the premises until the rent and taxes are paid, the mere failure at the end of the first period to pay the one year's. rent extraordinary and costs, through ignorance of the fact that the term had expired, and under the circumstances of this case, does not entitle the landlord to re-enter and take permanent possession of the premises, and a court of equity will compel the lessors to perform their covenant to renew.

Appeal from the Law and Chancery Court of the city of Norfolk, pronounced February 10, 1896, in a suit in chancery wherein the appellees were the complainants, and the appellants were the defendants.

*Affirmed.*

The object of this suit was to compel the defendants to renew for another period of ninety-nine years the lease mentioned in the opinion.

The opinion states the case.

*Loyall & Taylor,* for the appellants.

*W. L. Williams,* for the appellees.

HARRISON, J., delivered the opinion of the court.

This suit is for specific performance of covenants to renew certain leases. In 1793 William Eyre made four leases of land in the "Borough" of Norfolk, each for ninety-nine years, renewable forever. The first three expired June 1, 1891, and the fourth on June 1, 1892. The appellants have succeeded to all the rights of the lessors, and the appellees to all the rights of the lessees under the leases.

The leases provide that the lessee shall have and hold the land granted for and during the term of ninety-nine years renewable forever, yielding and paying annually therefor on the 1st day of June in every year during the term the full and clear rent of —— pounds, without any deduction for taxes or other impositions, and if it shall happen that the yearly rent or any part thereof accruing during the term shall remain unpaid for six months after it becomes due, then it shall be lawful for the lessor to re-enter the premises or any part thereof, and hold and enjoy the same as in his former estate until all arrearages of rent are paid. It is further provided that the lessee shall at all times thereafter have, hold, and enjoy, the premises with the appurtenanaces during the term, subject to the rent and right of re-entry aforesaid, and that, at the expiration of the term, the lessor or his representatives, in case the conditions be fully complied with so as to entitle the lessee to a renewal of the lease, shall and will execute a new lease for the same term and on the same conditions as the first, except that one year's rent extraordinary, and the charges of drawing and recording the conveyance shall be paid by the lessee at the time of renewal, and that a continuance

of the lease shall be preserved forever at the expiration of the several terms "in manner" and subject to the conditions aforesaid. These provisions are common to the four leases.· Three of them have the additional covenant on the part of the lessee, that he will continue tenant under leases renewed as aforesaid forever at the rent and under the conditions aforesaid.

It appears that the aggregate annual rental reserved in the four leases was $230.04; that the present rental value of the property with the buildings erected thereon by the lessees is over $2,000 *per annum*; that there has been no change in the value of the property since 1890, which was prior to the expiration of the first ninety-nine-year period of all the leases; that the annual rent and the taxes, without any demand being made therefor, have always been paid by the lessees, though not always on the exact date when due; and that for several years after the expiration of the first ninety-nine-year period the rent was paid and accepted as formerly, the lessors not offering to execute a renewal of the same, nor the lessees making any demand therefor.

It further appears that the mother of the appellees had a life estate in the leases that did not expire until October, 1893, when appellees, as remaindermen, came for the first time into the management and control of the property; that appellees were ignorant of the expiration of the first ninety-nine-year period, and did not discover the fact until after their mother's death, when they at once employed counsel to prepare the necessary renewal deeds and have them executed, but before this was done they were served on the 15th of February, 1894, with notice to quit.

It further appears that appellees, as well as their mother, during her life time, were always able to comply with the terms of renewal, and that, after the notice to quit was served, they tendered the rent extraordinary with interest from the time it was due and costs of new leases, and demanded a renewal of the same, which was refused.

The question presented is whether, under the circumstances of this case, these large and valuable leasehold estates have ceased to exist and become the property of the lessors, or can a court of equity enforce specific performance of the covenants to renew upon the equitable condition that the stipulated rent extraordinary, and costs of renewal be now paid by the lessees.

The exercise of the equitable jurisdiction in suits for specific performance is always subject to the discretion of the court, not an arbitrary discretion, but one to be exercised with due care and attention, in looking to the conduct of the parties, and to the facts and circumstances of each particular case..

No one can read these contracts and escape the conclusion that the purpose and understanding of the parties was that they were creating a perpetual lease that would yield the lessor an annual ground rent forever, the payment of which was secured by the right of re-entry in case of default, while the lessee acquired a perpetual interest in the leased premises, which would justify his making permanent improvements thereon, and enable him to avail himself of the value of the property enhanced from this and other causes.

Nor can any one doubt that the present lessors knew and understood perfectly that the present lessees had no intention of surrendering these valuable rights, worth thousands of dollars, for no other consideration than escaping the payment of the one year's rent extraordinary and the annual ground rent of $230.04.

Appellants contend that these are optional or unilateral contracts; that the prompt payment of the taxes, the annual rent, and the one year's rent extraordinary when due, were conditions precedent to be performed by appellees to entitle them to a renewal of the leases, and that the time having passed for their performance the covenants to renew cannot be enforced.

The only default that can be imputed to the parties asking relief in this case is the non-payment of money when due. All the annual rent and all the taxes have been paid, and the rent

extraordinary was tendered and refused. The only failure of
the lessees has been in point of time. They were behind in
the rent a few weeks on some occasions, and several months on
others when they would pay interest, and yet it was all paid
without any demand therefor, and without a word of protest at
receiving it from the lessors.

Mere default in the payment of money at a stipulated time ad-
mits generally of compensation, and hence time of payment is
seldom treated as essential in contracts in respect to real estate.
That time was not of the essence of these contracts seems plain.
It is not usually so considered in equity, and there is nothing
in the leases to show that the parties so regarded it. On the con-
trary, it appears that the rent might remain in arrears six
months before the lessors could exercise their right of re-entry,
and could then retain possession only until the rent was paid.
The course of dealing of the parties shows that they did not re-
gard time as of the essence of the contracts, for strict payment
on the day when due was not customary or required.

There is no lack of power in a court of equity to grant relief
against the failure to perform punctually conditions precedent
when time is not of the essence of the contract, and compensa-
tion can be made. Story's Eq. J., sec. 1315; 1 Lomax Dig.,
p. 357.

In determining the right of the lessee to renew in this class
of cases, the question to be considered is, has the party asking
for relief been guilty of gross negligence, or is the default re-
lied on the result of mere negligence. Judge Story states the
doctrine thus: "When the terms of an agreement have not
been strictly complied with, or are incapable of being strictly
complied with, still, if there has not been gross negligence in
the party, and it is conscientious that the agreement should be
performed, and if compensation can be made for any injury
occasioned by the non-compliance with the strict terms, in all
such cases courts of equity will interfere, and decree specific
performance; for the doctrine of courts of equity is not for-

feiture but compensation, and nothing but such a decree will in such cases do entire justice between the parties." Story's Eq., sec. 775.

In *Lennon* v. *Napper*, 2 Sch. & Lef. 684, Lord Redesdale, in an able and instructive opinion, expressly decides that in cases like the one at bar time is not essential, and points out the distinction between the case of mere neglect, which will not exclude the party from the right of renewal, from the case of wilful neglect or refusal to renew, after which a court of equity will not interfere, holding that in cases where the lessee has suffered a lapse of time from mere negligence the court will grant relief. See also *Chesterman* v. *Mann* (41 Eng. Ch. R.), 9 Hare 206; *Banks* v. *Haskie*, 45 Md. 207; *Worthington* v. *Lee*, 61 Md. 530.

Gross neglect on the part of the lessee would in this, as in other cases, be an insuperable bar to relief in equity. Enough has been already said, however, to show that the appellees have not been guilty of such laches as would, in a court of conscience, exclude them from the right to have the leases in question renewed in accordance with the provision to that end contained therein.

The decree appealed from must therefore be affirmed.

BUCHANAN, J., concurs in results.

*Affirmed.*