# Richmond

MAURICE BERKOW AND LILLY BERKOW v.
HENRY L. HAMMER.

April 25, 1949.

Record No. 3485.

Present, All the Justices.

The opinion states the case.

*Armistead L. Boothe*, for the appellants.

*Samuel B. Brown*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

On November 2, 1942, Maurice Berkow and Lilly Berkow, sometimes hereinafter referred to as lessors, entered into a lease with Henry L. Hammer, demising unto the latter all of the first floor of the premises known as 709-711 King Street, Alexandria, Virginia. The lease was for the term of five years from its date, at the rate of $225 per month. It contained an option of renewal, with changed rentals, for a period of five years, in the following language: "with the right and privilege to the said party of the second part (Hammer) to renew the said lease for a further and additional period of five years from November 2, 1947, at a monthly rental of Two Hundred Fifty Dollars ($250.00) per month, and the exercise of the privilege of this said renewal option to be made known to the said parties of the first part, or their assigns, in writing within sixty days prior to the expiration of this Lease."

On September 16, 1947, lessors wrote Hammer, stating that the provisions of his lease required a sixty days notice in writing to the lessors, if a renewal was desired, and that since such notice had not been given before September 2, 1947, possession of the leased premises was demanded at the expiration of the then present term on November 2, 1947. Hammer received this notice. Subsequently, on October 15, 1947, he mailed a registered letter to the lessors, who were then in Florida, stating that he desired to renew the lease pursuant to its provisions for the further period of five years from November 2, 1947. This letter was not received by the lessors.

On October 27, 1947, Hammer caused to be served on the lessors a written notice that he elected to renew and extend the lease for the further period of five years.

Possession of the premises not being delivered to the lessors, in accordance with their demand, they filed on November 8, 1947, an action of unlawful entry and detainer against Hammer. Hammer filed a plea of not guilty.

On November 20, 1947, Hammer countered by filing a bill in equity against the lessors. In his bill he set out the terms of the lease, alleging that he had complied with its

terms, and had, in fact, given due notice of his intention on October 15, 1947, to renew it; that he was conducting a profitable business on the premises; and that he would suffer irreparable damage and injury if dispossessed. He prayed that the lessors be required to grant the renewal and be enjoined and restrained from further prosecution of the action of unlawful entry and detainer, and for such further and general relief as the nature of his case required.

The bill contained no allegation that the requirement of a notice for renewal was included in the lease by reason of fraud, mistake or accident, or that the language of the renewal provision was ambiguous.

On the day of trial, Hammer was allowed to amend his bill by adding an allegation that it was the intention of the parties to give the tenant "a five-year renewal without any notice to be given, and, under the circumstances, the tenant was equitably entitled to an extension of the five-year lease."

The lessors answered, denying the principal allegations of the bill and amended bill. They admitted the lease contained an option to renew; but averred that, under its terms, Hammer was not entitled to a renewal unless he gave notice in writing of his election to renew on or before September 2, 1947, and that such notice was not received by them until October 27, 1947, fifty-five days late.

By stipulation of counsel for the parties, the unlawful detainer action and the chancery cause were consolidated, and the issues involved in both cases were tried in one equity proceeding. It was agreed that the damages due from Hammer to the Berkows, in the event that the latter's contentions were sustained, were to be ascertained after the determination of the issues involved in the consolidated proceedings.

The evidence was taken *ore tenus* before the trial judge.

Subsequent to the objection that parol evidence should not be admitted to alter, vary, or contradict the terms of the lease itself, the whole matter was thrown open to the court, sitting as a court of equity, especially with regard to the negotiations between the parties leading to the execution of the lease.

According to the testimony of Hammer, his contention was twofold. He testified that he thought he had been given a ten-year lease; that the requirement of a notice for renewal for a five-year period had never been discussed between him and the lessors during the negotiations; and that he did not know such a provision was contained in the lease. He claimed, however, that, under the language of the renewal clause, he had the right, at any time between September 2, 1947, and November 2, 1947, to give notice of his desire to renew. He admitted that the lease was prepared at his request by his attorney, and that he had a copy of it.

Maurice Berkow testified that in the beginning of his negotiations with Hammer, the latter asked for a five-year lease and nothing was said about one for ten years; that he agreed to a five-year lease and subsequently Hammer insisted upon having the privilege to renew the lease for five additional years; and that finally he decided to give him the right to renew with an increased rental, provided Hammer would give him a sixty-day notice prior to the end of the first term, so that he could protect himself by being informed whether Hammer was going to remain on the premises or not after the first term.

After taking the matter under advisement, the chancellor rendered a written opinion on June 21, 1948. He held that the clause which required a written notice of the election to renew was ambiguous; that, in view of the ambiguity, he felt justified in considering evidence of facts extrinsic to the lease; that these facts indicated to him "that at the time the lease was entered into, it was not the intention of the parties to require a sixty-day notice;" and he was of opinion "that lessee by his written notice of election to renew, had done so within sufficient time to require the lessors to renew the lease." The lessors were accordingly ordered and directed to extend the lease in accordance with its original terms until midnight November 1, 1952. The unlawful detainer action was dismissed, and the lessors enjoined and restrained from future prosecution of any action of unlawful detainer against Hammer arising from his possession of the leased premises.

Neither the bill nor the amended bill sets out specifically any circumstances of special hardship which would make it unconscionable to enforce the requirement that the lessee should have given notice of his intention to renew not later than sixty days before the expiration of the first five years to entitle him to such renewal. It is apparent that, in addition to lessee's contentions hereinbefore stated, he intended to rely upon circumstances of special hardship in the event it was held that he had not given due notice of his intention to renew. Considerable evidence with respect to such circumstances was introduced without specific objection by the lessors. The chancellor, however, in his written opinion, did not expressly find that circumstances of special hardship entitled the lessee to relief.

The lessors assign error to the ruling of the court that the language of the renewal clause was ambiguous, and to the admission of extrinsic evidence as to its terms and conditions. They further contend that no special circumstances were shown to exist entitling the lessee to equitable relief from the consequences of his failure to give notice not later than sixty days prior to November 2, 1947.

Although we have not had occasion heretofore to construe the word "within," when used in conjunction with the words "prior to," we do not find the problem of interpretation difficult, viewing the option in the light of options customarily used in leases. So used its meaning is neither unusual nor strained. It is well recognized in law. Courts in other jurisdictions have invariably construed the words to mean "not later than." Not a single case to the contrary has been cited, and we have been unable to find one.

Directly in point is *Royal Grocery Co. v. Oliver* (1922), 57 Cal. App. 278, 280, 207 P. 61, 62. There the parties entered into a lease for two years from February 1, 1919, to January 31, 1921. The lease contained an option to renew, with the provison "that, in the event the lessee herein shall fail to give the lessor herein a written notice of its lection to exercise this option for a 3-year renewal of this lease within 90 days prior to the expiration of this lease,

* * * this option shall become null and void." The tenant gave notice on November 11, 1920, seventy-nine days before the lease expired. Holding that the language required the lessee to give the lessor at least ninety days' notice of its intention to continue the tenancy, the court said:

█ "The usual purpose of requiring the lessee in any case to give notice of the exercise of an option to renew the lease is that the lessor may not be compelled to wait until the last day of the term of the lease before he may know whether or not the lessee desires to continue to occupy the premises for a further term, and thereby take the risk of having his premises remain idle for an indefinite period in the event that said option to renew the lease is not exercised. If appellant's contention be sustained, it would mean that appellant was not permitted to notify the landlord at any time during the year and nine months it occupied the premises that it desired to and would continue its tenancy after the original term fixed in the lease, but that it was required to wait until 90 days of the expiration of the lease before it could serve such notice. Such a limitation would obviously be to the disadvantage of both parties to the lease, and there appears to be no reason in law or fact why such a provision should have been made. If the option had read 'within 90 days of the expiration of the lease,' then there would be some force in appellant's contention; but the presence of the words 'prior to' clearly indicates, we believe, that it was the clear intention of the parties that the notice should be served at least 90 days prior to the date on which the lease expired."

In *United States* v. *Sena*, 15 N. M. 187, 196, 106 P. 383, 385, the phrase, in a rule of court, reading "at any time within twenty days before the first day of the term," was construed as meaning "at any time in not less than twenty days," before the first day of the term.

In *Hammond* v. *Connolly*, 63 Tex. 62, the words, "within three days before the trial of the cause," contained in a statute, were construed to mean "at least three days before the trial."

In *Application of Dowdall,* 138 Misc. 269, 245 N. Y. S. 539, the foregoing cases were reviewed, and the court said:

"If these cases set forth the true rule, and I am inclined to that view, then the words 'within one week before a general or special election' must mean 'at least one week before a general or special election' or 'at any time in not less than one week before a general or special election.' This construction of the statute is reasonable and makes its operation practicable."

In *Levert* v. *Read,* 54 Ala. 529, it was held that the word "within" when used in connection with "prior" or "before" means "not later than".

The same question arose in *Pryor* v. *Pryors* (1941), 56 Ariz. 572, 110 P. (2d) 229, where the court said that "The word 'within' when used in connection with the word 'before' meant 'not later than' or 'at any time not less than'."

The reasoning in the case of *Royal Grocery Co.* v. *Oliver, supra,* is so logical, sound and convincing that little more need be said on this phase of the case.

In view of Hammer's testimony that he thought he had a ten-year lease, that there was no mention of a notice of renewal being required of him, and that he did not know such a requirement was in the lease, he could hardly have interpreted the renewal clause at the time the lease was executed.

It is difficult to believe that the lessee, a substantial business man, did not know the difference between a ten-year lease and one for five, with the right of renewal for five. The difference is most material to the rights of both the lessor and lessee. Although Hammer testified that he believed the lease contained no requirement of notice, and that there was no discussion of notice being required, the contrary is definitely set out by the fact that the lease contained on its face a requirement that notice be given. The reason or purpose of requiring such a notice is too plain to be discussed. If the notice to be given was confined to a day within the period of sixty days immediately preceding the termination of the first five-year period, there

would have been little reason for incorporating in the lease the requirement of any notice. The purpose of requiring any notice would lose effect if a tenant could wait until the last minute of the last day of an expiring term to give notice that he desired a renewal. Any such construction as Hammer would put upon the renewal clause would render null and void any notice given more than sixty days before the expiration of the first period. It would be giving the option an unreasonable and unjust interpretation, unfair to both lessee and lessor.

It is our conclusion, fortified by reason and authority, that the language of the renewal clause clearly required that notice be given not later than sixty days before the expiration date of the first five-year period in the lease to entitle the lessee to the additional period. The written lease contained the entire agreement between the parties, and the admission of evidence of extrinsic facts to alter or vary the terms of the agreement should not have been allowed.

It is difficult to lay down any general rule as to when equitable relief will be granted a lessee who has failed to give a notice of renewal in accordance with the provisions of his lease. It is generally held that time is of the essence of the option, and the provision for the notice a condition precedent, upon the performance of which lessee's right to a renewal is dependent.

All of the authorities agree that equitable relief cannot be afforded where the failure to give notice has been due to wilful or gross neglect. Some deny relief in every case of failure, *Dikeman* v. *Sunday Creek Coal Co.*, 184 Ill. 546, 56 N. E. 864; *Doepfner* v. *Bowers*, 55 Misc. 561, 106 N. Y. S. 932.

Other courts hold that relief may be granted in cases of special hardship where the lessor will not be prejudiced thereby, and hardship to the tenant is so great as to make it unconscionable to enforce the condition precedent to the lease. *Donovan Motor Car Co.* v. *Niles*, 246 Mass. 106, 140 N. E. 304; *Bickford* v. *Dillon* (1948), 321 Mass. 82, 71 N. E. (2d) 611; *Shatford* v. *Gulf Refining Co.* (W. D.

La. 1946), 65 F. Supp. 728; *Bluthenthal* v. *Atkinson*, 93 Ark. 252, 124 S. W. 510; *Merchants Oil Co.* v. *Mecklenburg County* (1937), 212 N. C. 642, 194 S. E. 114; *Heyden* v. *Barnsdall Refining Co.*, 192 Ark. 789, 94 S. W. (2d) 709; *Thiebaud* v. *First Nat. Bank*, 42 Ind. 212; *Fidelity, etc., Trust Co.* v. *Levin*, 128 Misc. 838, 221 N. Y. S. 269; 32 Am. Jur., Landlord and Tenant, section 981, page 824; and Annotation 27 A. L. R. page 981, *et seq.*

In *Fountain Co.* v. *Stein*, 97 Conn. 619, 118 A. 47, 27 A. L. R. 976, a somewhat broader rule was adopted. There it was held that equity may grant relief from mere inadvertent neglect to give the stipulated notice of a desire to renew a lease, where the delay has been slight, and refusal to grant relief would result in such a hardship to the tenant as to make it unconscionable to enforce literally the condition precedent in the lease.

In addition to *Fountain Co.* v. *Stein, supra,* Hammer relies upon *Selden* v. *Camp*, 95 Va. 527, 28 S. E. 877.

The case of *Selden* v. *Camp, supra,* involved four leases executed in 1793, for ninety-nine years, renewable forever. The leases provided that the lessee should pay an annual rental on the first day of June in each year, that if it remained unpaid for six months, the lessor should have the right of reentry, and that at the expiration of the first term, the lessee could renew for the same term upon the payment of extra rent. The rent and taxes were always paid by the lessee, although not on the date due. For several years after the expiration of the first period, the rent was paid and accepted, the lessor not offering to renew nor the lessee demanding a renewal. The lessee died and her successors in title made no demand for renewal until two or three years after the first term had expired, the delay being due to their ignorance of the expiration of the term. They then tendered a renewal deed and the extra rent with interest. The court found that the parties intended to create a perpetual lease, yielding an annual rent forever. The only default on the part of the lessee was the late payment of annual rent, and the delayed payment

of the extra rent at the time of renewal. Under those circumstances, the court held that time was not of the essence in long term contracts of this nature. It did not undertake to extend that rule to short term leases.

However, as we view the evidence in this case, the lessee has not brought himself within either of the rules laid down by the authorities cited.

The following facts and circumstances are disclosed:

The Berkows, prior to November, 1942, had for eighteen years operated a cleaning, dyeing, laundry, and shoe repair business at 709-711 King Street. They then sold the entire business to Hammer for $12,500, and, at the same time, executed the lease in question for the premises. Hammer immediately took possession of both the personal property and the premises, continuing the business the same as formerly conducted by the Berkows. Hammer testified he put expensive repairs upon the property shortly after entering thereon. He subsequently built a new plant on Montgomery Street in Alexandria, which was said to be one of the best equipped of its kind for its size. There he established his principal place of business. He discontinued cleaning, pressing, dyeing, and laundry work at the King Street store, leaving that place open only for shoe repairing and as a pick-up station for his business plant on Montgomery Street. On Montgomery Street he had all the necessary equipment for cleaning, pressing, dyeing and tailoring, and there the work was done. His advertisements in the newspaper and in the telephone directory showed his principal place of business as 604 Montgomery Street. Within eight months after opening up his new plant, he admitted doing as much business there as at his King Street plant. Hammer owned properties at 213, 215, and 217 King Street, Alexandria. He was planning on other outlets; but claimed that the King Street store was his main receiving station. The evidence indicated that properties suitable for the dyeing and cleaning business were scarce on King Street; but there were other properties available for feeder and outlet purposes in the near vicinity of 709-711 King Street.

It has not been satisfactorily shown that any great hardship will be imposed on the lessee by denying him a renewal of the lease for the King Street store. It is true that he put repairs upon the property to attract customers and to improve the character of his work, and that he built up the good will theretofore established by the lessors; but that was done in the usual course of business. It may be inconvenient for him to move to a new location, and, perhaps, be required to pay a larger rental for another storeroom. The evidence discloses that the Berkows are losing $100 to $250 per month because of the lessee's refusal to move from the premises.

The facts viewed as a whole show no circumstances of special hardship to Hammer as will make it unconscionable to enforce the condition precedent of the lease. The mere fact that the premises will be useful and profitable to him gives us no right to write a new contract between him and the Berkows, or to relieve him from his failure to give the written notice required by his lease. Voluntarily or involuntarily he took a risk which daily occurs in business ventures. That he lost his right to renew is due to his own fault.

For the foregoing reasons, the decrees of the trial court are reversed, and the case remanded, with direction to dismiss the bill of the lessee, enter judgment for the lessors in the action of unlawful entry and detainer for possession of the premises, and order a trial therein for the assessment of the damages incurred by the lessors since November 2, 1947, as a result of lessee's continuance in the property beyond that date.

*Reversed and remanded.*