54 So.2d 201 (1951)
DUGAN et ux.
v.
HAIGE et al.
Supreme Court of Florida, en Banc.
September 7, 1951.
*202 H.A. Kooman, St. Petersburg, for appellants.
Ed W. Harris, St. Petersburg, for appellees.
ROBERTS, Justice.
The principal question here presented is whether the lower court abused its discretion in relieving the lessees, the appellees here, from the consequences of their failure to comply strictly with the provisions relating to the renewal thereof. The lease was for a term of ten years, and provided that "If the Lessee desires to exercise its option to renew the lease for said period of five years, it shall give written notice to the Lessor of such intent at least thirty days prior to the expiration of said ten year lease." The lease expired on June 1, 1950; thus, the notice of renewal was due on May 1, 1950, but the lessees failed to give to the lessors, the appellants here, such notice until May 19, 1950, which was two days after the lessors had given them notice to surrender the possession of the property on June 1, 1950.
The Chancellor, who heard the testimony, found as a matter of fact that the lessors had actual notice of the lessees' intention to extend the lease; that the lessors had not been harmed or damaged by the lessees' delay in giving the written notice; and that the equities were with the lessees. He thereupon decreed that the lease be deemed extended for the five-year period contemplated by the lease.
There is ample testimony to support the findings of fact of the Chancellor. It also appears that the reason for the lessees' failure to give the written notice was because the only copy of the lease agreement in their or their attorney's possession set forth a fifteen-year term.
We think that, under the circumstances here present, the Chancellor did not abuse his discretion in granting relief, under the rule stated in 32 Am.Jur., Landlord and Tenant, Section 981, page 824, that "Equity will relieve against the consequences of a failure to give notice which is a condition precedent to the renewal of a lease when such failure results from accident, fraud, surprise, or mistake, and there are other special circumstances which may warrant a court of equity in granting relief against the consequences of the lessee's failure to notify the lessor, within the stipulated time, of an intention to exercise the privilege of renewal."
The question presented by the appellees, on their cross assignment of error, has been considered, and no error has been found.
For the reasons stated, the final decree appealed from should be and it is hereby
Affirmed.
SEBRING, C.J., and TERRELL, CHAPMAN and ADAMS, JJ., concur.
PARKS, Associate Justice, dissents.
HOBSON, J., not participating.
PARKS, Associate Justice (dissenting).
The question for determination is whether plaintiffs' evidence, accepted in its most favorable light, bring them within the protective shelter of equity found in the rationale of the hardship and special circumstances cases to secure relief from the consequences of their failure to give the written notice within the time prescribed by the lease. The Circuit Court found in the affirmative.
The general use of this clause or one of similar nature in leases has been long established. *203 They are common to leases where provision is made for additional terms to that specified. The subject is of such general interest, it is believed, to warrant this expression of views.
On April 10, 1940 Haige Bros., Inc., a corporation and the Dugans entered into a preliminary memorandum agreement for a lease of the premises. This agreement, in brief, provided for a term of 15 years, fixed the amount of rent to be paid, authorized the Haiges generally to install fixtures, improvements, etc. and stipulated that all attached fixtures or improvements should not be removed at the termination of the lease. In pursuance of the memorandum, on May 10 following, the parties executed a formal lease with many of the usual covenants found in leases of commercial property. Instead of the term of 15 years called for by the memorandum, the parties saw fit to substitute a term of 10 years beginning June 1, 1940, with the option, however, to renew for an additional term of 5 years, if Haige so desired, and providing that in the event of the exercise of the option "it shall give written notice to the (Dugans) of such intent at least 30 days prior to the expiration of the said 10 year lease." It was further provided that if default be made in any of the covenants or agreements in the lease the Dugans had the right, without notice, to declare the term ended and to re-enter and repossess the premises.
Possession was taken June 1 and Haige, in due course, finished the installation of certain improvements and fixtures in the building adaptable to the operation of a cafeteria. Acoustic ceilings, mahagony paneling and mirrors in the walls, some flooring in the dining room, one or more lavatories with tile floors, and a sprinkling system were installed. In "the following years" the kitchen floor was tiled. No further improvements were made during the 10 year period of 1940-1950.
In February, 1941, the lease was assigned by Haige Bros., Inc. to the four plaintiffs, Haiges.
The controversy was precipitated by the failure of the Haiges to give the prescribed written notice more than 30 days prior to May 31, 1950, the end of the 10 year term. It was not given until the receipt of a letter from Dugan's lawyer on May 17 advising that, because of their failure to give the notice, the lease had been terminated and possession required. Plaintiffs' excuse for their failure to give the notice, according to Lander Haige's testimony, was that he thought that they occupied the premises by virtue of the memorandum agreement which ran for 15 years; that he never knew of the existence of the lease until the receipt of the letter of termination. He, however, admitted that his signature appeared on Dugan's copy of it.
Lander Haige appears in the record as the dominant partner in the negotiations of all matters involved in the transactions for the lease, as well as all matters arising during and pertaining to the occupancy of the premises. He, as President of Haige Bros., Inc. signed the original memorandum, the lease and the assignment of the lease to the plaintiffs. He alone of the plaintiffs appeared as a witness in the case.
He further testified that shortly prior to May 1, he heard a rumor that the premises had been leased to another and, after consulting with a co-partner, inquired at the office of his lawyer where the original lease had been drawn and executed if there was, in fact, a lease in existence. He was told by that office that they could find a copy of the memorandum only, and as far as was known to them, there was no lease. He made no inquiry of the Dugans concerning the matter although they were available, and friendly relations had been continually maintained with Auldon B. Dugan, the partner representing the Dugan partnership throughout the transaction. The proof establishes that a copy of the lease was made for the plaintiffs but no clear explanation of its disposition is offered.
To impute knowledge to the Dugans of their intent to exercise the option to renew, plaintiffs produced evidence that Auldon B. Dugan was in the cafeteria once or twice during the annual cleanup in the latter part of April or first part of May, 1950. Doubtful though it be, this evidence is accepted here as sufficient to impute actual *204 knowledge of plaintiffs' intent to avail themselves of the option to extend the lease.
The bill charges large expenditures were made in painting and redecorating immediately prior to the termination letter but no proof was produced to support them. The only expenditures proved consisted of employing workman to wash and clean the premises preparatory to the annual fall painting and decoration. This expense apparently was of such little consequence that no evidence was offered to prove it. In fact, no evidence of the value or amount of any loss or damage of any character which the Haiges will suffer as a result of the termination of the lease was produced. An attempt to prove the original cost of the improvements was made but this failed. No attempt was made to prove their current value after the years of use. Since it is conceded that all improvements became a part of the building and were not removable at the termination of the lease, the Haiges interest in them, in the event of renewal, was confined to the right of use during the 5 year period. Obviously, the nature of the improvements, their obsolescence, and their long use made their current depreciated value or use-value highly speculative.
The Dugans' proof also falls short of establishing with certainty any loss or damage for failure to receive the notice. Little importance was attached by either plaintiffs or defendants to the proof of this phase of the case.
Considering Lander Haige's knowledge of the entire transaction from the beginning, the dominant part he played in behalf of the plaintiffs during their occupancy of the premises under the lease and, particularly his negotiations concerning the memorandum, the lease, the assignment and the execution of the several instruments, it must be held that he knew of the existence of the lease, and is, therefore, chargeable with knowledge of its terms. His knowledge is the partnership's knowledge. It is, therefore, evident that their failure to give the notice was due chiefly to their forgetfulness. Diligence also was lacking.
The lease conditionally gave the right to acquire a lease for another 5 year term. It created no vested estate and none is created until the condition precedent  the giving of the notice  is performed. Time is of the essence of the agreement. Similar provisions have been of long use and are commonly found in leases for a specified period with an option for renewal for additional periods. Good reasons support the condition, good faith and diligence in its timely observance is intended by the parties, and the Courts give effect to and recognize its validity. Its force, however, has been tempered in equity when the failure to perform is due to accident, fraud, surprise or mistake, and as a consequence thereof the lessee will suffer a degree of hardship that will make its literal enforcement unconscionable against him. The tempering of the obligation is justified on the ground that while no estate is actually vested, yet the real intent and purpose of the agreement is that a right in the nature of an estate is granted, and so, to effect its object, relief is granted under those circumstances. This basis of equitable intervention is not dissimilar to that in cases of specific performance.
There was no fraud, accident, surprise, mistake or hardship proven. The sole basis of relief in the evidence is their forgetfulness. Forgetfulness is negligence and without accompanying hardship is not enough to arouse the aid of equity. Neither does the knowledge of the Dugans that the Haiges intended to exercise the renewal option, joined with their failure to suffer harm or damages, supply the basis for relief. Here there was negligence, a lack of diligence in the performance of the agreement for notice, and want of hardship. No case has been found where relief was granted under such circumstances. Enough is alleged in plaintiffs' bill to make out a strong case for the relief sought but the supporting proof is not in the record. F.B. Fountain Co. v. Stein, 97 Conn. 619, 118 A. 47, 27 A.L.R. 976 and note; Berkow v. Hammer, 189 Va. 489, 53 S.E.2d 1; 51 C.J.S., Landlord and Tenant, § 59, page 604, 32 Am.Jur. 824, Sec. 981. The determination of the correlative rights of the parties under such agreements has not been easy for the *205 Courts. Different approaches to the problem and marked disagreement in the ratio decidendi of the cases characterize the authorities. The rule announced, in the opinion of the writer, more nearly promotes the intent of the parties to the agreement and accords with fair dealing and good conscience.
The decree should be reversed.