SENTARA ENTERPRISES, INC.

V.

CCP ASSOCIATES, ET AL.

Record No. 910454

January 10, 1992

Present: All the Justices

*Walter D. Kelley, Jr. (Conrad M. Shumadine; Mark D. Stiles; Willcox & Savage*, on brief), for appellant.
*William S. Smithers, Jr. (Anton J. Stelly; Thompson, Smithers, Newman & Wade*, on brief), for appellees.

JUSTICE COMPTON delivered the opinion of the Court.

In this landlord-tenant controversy, the main question is whether equity will relieve a tenant from the consequences of its

failure to give a notice to renew, absent a showing of fraud, mistake, surprise, or accident.

In 1987, the predecessor to appellant Sentara Enterprises, Inc. (the tenant), leased a building in Hampton from the predecessor to appellees CCP Associates, B. Roland Freasier, Jr., James F. Thacker, Dennis A. Pryor, and Bobbie L. Roberts (collectively, the landlord). The tenant has operated an "urgent care center" in the leased premises.

The written lease agreement provided that its initial term would run until July 31, 1990. According to the agreement, the tenant had the option to renew the lease on the termination of the initial term for five additional periods of three years each upon 30 days written notice to the landlord prior to expiration of the initial term or prior to the expiration of any renewals or extensions exercised by the tenant. The tenant also had an option to purchase the property, if not otherwise in default of the lease.

The lease also provided: "In the event Tenant fails to notify Landlord of its intention to renew, this Lease shall expire without further action by the parties." The tenant failed to give written notice of its intention to renew the lease beyond its initial term.

During the period August 1990 to October 1990, there was an exchange of letters between representatives of the landlord and tenant. On August 8, the landlord wrote the tenant that "your lease . . . terminated on July 31, 1990. Since your company has neither renewed the lease nor exercised its purchase option contained in the lease, you are occupying the leased premises with no agreement between the Landlord and the Tenant." The letter stated: "If you wish to enter into a new lease agreement please let me know within fifteen days, otherwise we will begin looking for a new Tenant."

The tenant responded by letter dated August 10. The tenant wrote: "This letter shall serve as notice that Sentara Enterprises chooses to renew our lease . . . . We are sorry that our earlier notice somehow did not reach your office."

On August 14, the landlord wrote the tenant, pointing out the lease provisions relating to notice of renewal and the effect of a failure to give the notice. The landlord said: "As I stated to you in my letter of August 8, 1990, you are occupying the premises with no lease agreement . . . . Again, if you wish to enter into a new lease agreement, please let me know within ten days, otherwise we will begin looking for a new tenant."

On September 11, the tenant wrote to appellee James F. Thacker who, on behalf of the landlord, had been dealing with the tenant's representatives. The tenant referred to an oral discussion held "the other day" and stated: "I am sorry you did not receive our notice to exercise the renewal of our lease. Sometimes our best efforts can still go awry. In any event, we would like to renew the lease according to our existing agreement."

On September 28, the landlord wrote the tenant and stated: "In response to your letter of September 11, 1990, let me again point out that the lease . . . has terminated. You are presently on a month to month lease. We are depositing your checks on this basis." During the period of the correspondence, the tenant had been tendering monthly rental payments, which the landlord had been depositing, for sums less than demanded by the landlord for the month-to-month tenancy. The landlord also stated: "It is important that we negotiate a new lease as soon as possible, if you desire to continue."

Finally, on October 12, the landlord wrote the tenant and referred to the repeated notifications that the tenant was occupying the premises "without a lease." The landlord advised: "We have entered into a lease with another tenant whose lease term begins January 1, 1991. We are hereby notifying you to vacate the premises on or before December 31, 1990."

In November 1990, the tenant filed the present chancery suit against the landlord seeking injunctive relief as well as damages. In the bill of complaint, the tenant set forth the lease terms, including the provision for 30-day notice. The tenant conceded that the landlord was "not given written notice within this time period."

In its pleading, the tenant reviewed the exchange of letters and alleged that, after this exchange, "the parties orally discussed renewal of the lease." The tenant further alleged that during a September 6 telephone conversation with the tenant's president, "Thacker agreed to waive the time requirement for giving notice of renewal and further agreed to renew the lease." The tenant also alleged that, based on Thacker's representations, the tenant made rental payments "due under the lease" and made "improvements to the leased premises at substantial expense to itself and did not negotiate a new lease for its urgent care center."

The tenant stated its claim for relief in three counts, two labelled "Breach of Contract" and the third labelled "Estoppel." In

all the counts, the tenant took the position that the original lease agreement had been renewed; no claim was made based upon any new relationship existing on a month-to-month basis subsequent to July 31, 1990.

In the first count, the claim was that the landlord "received formal notice that Sentara would renew the lease on August 10, 1990," and that the landlord "accepted this notice as a formal and binding renewal of the lease." Based on this contention, the tenant alleged the landlord breached the agreement by demanding that the tenant vacate the premises no later than December 31, 1990. In the second count, the tenant alleged that the lease agreement was breached when the landlord entered into a contract to sell the demised premises to a third party. In the third count, the tenant, relying on the waiver-of-notice argument and asserting that the original lease agreement "was in full force and effect," contended that it relied upon the landlord's "representations to its detriment by making rental payments under the lease, by subsequently making substantial improvements to the leased premises and by not negotiating a new lease."

In the prayer of the bill of complaint, the tenant sought "an Order preliminarily and permanently enjoining [the landlord] from depriving Sentara of possession of the leased premises until such time as the lease, including any renewals, expires" and from "conveying the leased premises to anyone other than Sentara."

The landlord filed a demurrer, answer, and "counterclaim." In the demurrer, the landlord asserted that the bill failed to state a legally cognizable claim because the tenant "admits it failed to make timely renewal of the lease and the alleged oral contract between Sentara and CCP is not enforceable as it violates the Statute of Frauds." As a second ground of the demurrer, the landlord asserted that "equity will not enforce a contract claim arising from the negligence of the party whose failure to act is the basis of his claim, absent a showing of accident, fraud, mistake or surprise that excuses his negligence."

In its "counterclaim," the landlord asserted that, because the original lease was terminated due to lack of notice to renew, the tenant was offered a new lease, which the tenant refused. The landlord alleged that it entered into a lease with a third party to commence on January 1, 1991, and that it had notified the tenant to surrender the premises. Based on those allegations, the landlord sought an order enjoining the tenant from occupying the premises

after December 31, 1990, sought judgment on the theory of quantum meruit for rent due for the months August through December 1990, and sought an order that the tenant was unlawfully detaining the premises after December 31, 1990.

The landlord also filed a notice of hearing for relief captioned as follows: "Defendants' Demurrer and Motions to Deny Plaintiff's Prayers for Temporary and Permanent Injunctive Relief and to Compel Plaintiff's Surrender of Premises No Later Than December 31, 1990." On December 19, the trial court held a hearing on this request for relief.

On December 21, 1990, the trial court entered the order from which the tenant appeals. The order recites that the court heard the matter "without oral evidence being taken, but with stipulation as to the lease agreement between the parties and the correspondence between the parties attached to the pleadings." The court sustained the demurrer and dismissed the bill of complaint. The court further ordered "that the defendants have judgment on their counterclaim to the extent that the plaintiff must surrender possession of the premises at issue no later than December 31, 1990, and is enjoined from possession of the premises thereafter."

On appeal, the tenant claims the trial court erred in sustaining the demurrer. It argues that "the elements of equitable estoppel" were adequately alleged in the bill of complaint and that its "breach of contract claims are not barred by the statute of frauds." We do not agree that the trial court erred in sustaining the demurrer.

The law is established that time is of the essence of an option to renew a lease and the provision for notice of renewal is a condition precedent upon which the tenant's right to renew depends. *McClellan* v. *Ashley*, 200 Va. 38, 43, 104 S.E.2d 55, 58 (1958). Moreover, equity will deny relief to a tenant where failure to give the notice required by the agreement is due solely to the tenant's negligence, unaccompanied by fraud, accident, mistake or surprise, and unaffected by the landlord's conduct. *Id.* at 43-44, 104 S.E.2d at 59.

This is because: "Equity aids the vigilant. Negligence is not favored as a ground for equitable relief, and when the lessee is able to assign no excuse for his failure to give the required notice other than his own negligence, to which the lessor in no way contributed, he is not entitled to be rescued by a court of equity from the consequences of his own negligence." *Id.* at 43, 104 S.E.2d at 59.

■ Furthermore, the powers of equity courts will not be arbitrarily exercised to alter the terms of a contract in order to correct an unfortunate situation resulting from a tenant's negligent failure to observe the contract requirements. " 'Hard cases must not be allowed to make bad equity any more than bad law.' [Citation omitted.] The hardship relied on to gain relief must be related to some principle within which equity moves, otherwise relief would be measured not by the contract made by the parties but by what might be considered by the court to be the exigencies of the situation in the particular case." *Id*. at 44, 104 S.E.2d at 60.

■ In the present case, relying exclusively on the purported renewal of the 1987 lease, the tenant applied for equitable relief to avoid the consequences of its negligent failure to renew; it sought to enjoin the landlord from exercising its right to possession and from leasing the premises to a third party. The lease terminated by its terms on July 31. Effective August 1, 1990, the tenant was occupying the premises without a lease due to its negligence in failing to give the notice to renew. There is no allegation that the failure to give the notice was accompanied by fraud, accident, mistake or surprise, or was affected by the landlord's conduct. Indeed, counsel for the tenant stated during oral argument of the appeal that the tenant "forgot" to send the notice. Thus, according to the foregoing principles, the tenant cannot be rescued from the consequences of its own negligence upon a theory of equitable estoppel.

■ Additionally, the allegations of the bill of complaint demonstrate, as a matter of law, that no breach of contract occurred. Significantly, the tenant asserts on brief that the breach of contract counts of the bill "do not allege breach of an oral agreement. The only oral event in this case involved the exercise of the renewal term contained in the *written* lease." This argument is consistent with the tenant's reliance solely on a purported renewal of the 1987 lease under an estoppel theory and demonstrates a refusal to accept the fact that the lease terminated as a matter of law on July 31. A contract which no longer exists cannot be breached.

■ In view of the foregoing analysis, and because of the tenant's insistence that the bill of complaint does "not allege breach of an oral agreement," we do not reach the statute of frauds issue. *See generally Smith* v. *Payne*, 153 Va. 746, 759, 151 S.E. 295, 299 (1930) (lease, present demise as distinguished from agree-

ment to lease, not to exceed five years "may be created as at common law by parol, that is verbally").

Addressing the second ruling made by the trial court, the tenant contends the court erred in granting judgment "on an unlawful detainer claim without taking evidence, without empaneling a jury and before the term of unlawful possession has ever expired." The tenant says that "the statutory unlawful detainer procedure was the only avenue open to" the landlord to expel the tenant from the premises. The tenant points out that the unlawful detainer statutes, first, permit the action against one whose entry upon the land is "lawful and peaceable" only when "the tenant shall detain possession of land after the right has expired, without the consent of him who is entitled to the possession," Code § 8.01-124, and, second, permit either party to the action to have a trial by jury, Code § 8.01-125.

The tenant argues that the "statutory scheme clearly envisions that an action for unlawful detainer will lie only *after* the period of consensual possession has expired," which "had not occurred in the instant case." According to the tenant, the landlord "admits" that the tenant "was not obligated to vacate the premises until after December 31, 1990 — a date that had not arrived at the time of the trial court's Order." Thus, the tenant argues, the trial court abrogated "all procedural safeguards" contained in the statutes "without evidence or a jury trial." The tenant iterates that it has substantial equitable defenses of waiver and estoppel which the trial court ignored because they were pleaded later in its "answer to counterclaim," the filing of which was not even due at the time of the December 19 hearing. We do not agree that the trial court erred in ordering the tenant to surrender possession of the premises no later than December 31.

As we have said, the tenant based its claim of relief wholly on the premise that the 1987 lease had been renewed; no claim was made based upon any relationship existing on a month-to-month basis subsequent to July 31. Within this framework established by the tenant in its bill of complaint, the landlord asserted that the period of unlawful possession or holding over under the 1987 lease began on August 1, 1990. This issue was a subject of the December 19 hearing and the December 21 order, entered over four months after the term of the tenant's lawful possession under the lease had expired.

▇ Therefore, no violation of the unlawful detainer statute occurred because the action was brought after the tenant's consensual possession under the 1987 lease had ended. (Neither party objected to joining unlawful detainer, a law action, with a suit in equity.) And, as we already have decided, allegations of waiver, estoppel, and breach of contract were insufficient as a matter of law; hence, there was nothing to submit to a jury.

Consequently, the judgment of the trial court will be

*Affirmed.*