# CIRCUIT COURT OF THE CITY OF RICHMOND

HCA Health Services
of Virginia, Inc.

v.

Bank of America, N.A.

Case No. HN-2230-4

Bank of America, N.A.

v.

HCA Health Services
of Virginia, Inc.

Case No. LL-2246-1

March 16, 2001

BY JUDGE RANDALL G. JOHNSON

These consolidated cases are before the court on demurrer. In Case No. HN-2230-4, HCA Health Services of Virginia, Inc. ("HCA") seeks an order requiring Bank of America, N.A. ("Bank of America" or "the Bank") to accept and acknowledge a notice of renewal of HCA's lease of 4315 Grove Avenue in the City of Richmond, an order requiring Bank of America to accept the monthly rent tendered by HCA, and an order enjoining the Bank from pursuing an action for unlawful detainer, which is Case No. LL-2246-1. The demurrer is filed in the first case.

By lease dated September 25, 1970, First and Merchants National Bank, Trustee under an agreement with Guy A. Shelton and Elizabeth N. Shelton, his wife, as landlord, leased to Orthopaedic Associates, a partnership, the premises in question which, at the time, were unimproved. The lease, which

contemplated the construction by Orthopaedic Associates of a medical office building, was for an original term of thirty years and provided Orthopaedic Associates three options to extend for consecutive and additional renewal terms of ten years each. In 1971, the contemplated office building was built, consisting of 9,804 square feet, with off-street parking, walkways, and landscaping. Bank of America is the successor in interest to First and Merchants, and by Assignment and Assumption Agreement and Consent of Landlord dated March 31, 1995, HCA purchased from Orthopaedic Associates the lease and improvements.

As just stated, the lease provided the tenant three options to extend for consecutive and additional renewal terms of ten years each. In order to exercise the options, the tenant is required to give the landlord "written notice of its exercise of such options at least six (6) months prior to the expiration of the then existing term." Since the original 30-year term began on September 1, 1970, notice of the tenant's intent to exercise the first option was due on or before March 1, 2000. Due to what HCA calls in its bill of complaint "mere inadvertence" on its part, the renewal notice, which by agreement of the parties has been attached to the bill of complaint and may be considered on demurrer, was not sent until May 30, 2000, nearly three months after it was due. On September 19, 2000, the Bank instituted an unlawful detainer action in the General District Court of the City of Richmond. That action was removed to this court on December 12, 2000. On December 6, 2000, HCA filed its bill of complaint seeking the orders and injunctive relief mentioned above. The actions were consolidated on January 5, 2001.

In its demurrer, Bank of America first argues that what HCA's bill of complaint really seeks is a declaratory judgment that the lease has been renewed for an additional ten-year period. Such relief is not appropriate, argues the Bank, because there is already an actual suit pending that will resolve the issue, that is, the Bank's unlawful detainer action, which is scheduled to be tried on April 24. The court notes, however, that since that action was brought by the Bank, the Bank could simply take a nonsuit and thereby return HCA to the uncertainty of not knowing if and when the Bank might try to evict it again. The demurrer will not be sustained on that ground.

The real issue before the court concerns the timing of HCA's notice of its intent to renew the lease. It is the Bank's position that because HCA did not give the required notice by the date specified in the lease, the lease ended after its original thirty-year term on September 1, 2000. To hold otherwise, says the Bank, would be to rewrite the parties' agreement, something courts are not generally allowed to do. HCA, on the other hand, argues that because the lease does not state that "time is of the essence" in giving the renewal notice, its

notice, even though late, must be accepted. Otherwise, says HCA, the Bank will be unjustly enriched by the significant improvements, that is, the medical office building, etc., made to the property by Orthopaedic Associates and HCA.

Each side cites several cases in support of its respective position. In *McClellan v. Ashley*, 200 Va. 38, 104 S.E.2d 55 (1958), which is cited by the Bank, a husband and wife leased a service station to a tenant for an original term of two years with an option to the tenant to renew for two consecutive and additional renewal terms of four years each. The tenant was required to give written notice of renewal thirty days before the leased expired. The original term expired on November 1, 1956. Written notice of renewal was not given until October 9, 1956. As happened here, the lessors filed an action for unlawful detainer, and the tenant filed a bill in equity to enjoin the lessors' action and for an adjudication that he had fully complied with the terms of the lease and requiring the lessors to grant a renewal for an additional four years. Also as happened here, the two cases were consolidated. The trial court granted the lessors possession and dismissed the tenant's bill. On appeal, the Supreme Court set out the tenant's arguments:

> He alleged that the renewal provision of the lease was ambiguous and that he should not be bound by the strictest interpretation thereof; that the lessors knew that he had intended to renew the lease and he had intended to give the written notice before October 1, 1956, and the delay was due to mere inadvertent neglect on his part. He alleged that he had at all times carried out the terms of the lease and that he had improved the property at great expense on the assumption that he would have possession for at least ten years, and if he should lose possession of the property he would suffer a tremendous and irreparable loss and would be left hopelessly in debt and if the lessors were given possession they would be unjustly enriched by reason of acquiring the improvements along with the good will of the business, and that it would be unconscionable to deny him a renewal for an additional four years.

200 Va. at 40.

The trial court was affirmed. After discussing the specific facts of the case, including the fact that the lessors would not suffer "any special loss in renewing the lease other than the loss of possession of what was to be theirs under the contract when it was terminated and the continuance of their

relationship with a tenant whom they considered undesirable," 200 Va. at 42, the Supreme Court said:

> In *Berkow v. Hammer*, 189 Va. 489, 53 S.E.2d 1 [1949], the lessee claimed that the renewal clause was ambiguous and that he had complied with the tenor of his contract, but if not, then equity should grant him relief because of circumstances of special hardship. The hardship sought to be shown there consisted, as here, of financial loss to the lessee due to the repairs and improvements he had made, the loss of the good will he had established, and there the higher rent he would have to pay elsewhere. We held those circumstances were not of such special hardship as to make it unconscionable to enforce the condition precedent of the renewal; that the mere fact that the premises would be useful and profitable to the lessee gave us no right to write a new contract between him and his lessors, and that the lessee's loss of his right to renew was due to his own fault.
>
> It is generally held, as was pointed out in that case, that time is of the essence of the option to renew and the provision for the notice is a condition precedent upon the performance of which the lessee's right to renew depends. It is also generally held, and we now hold, that before equity may relieve the lessee of the consequences of his failure to give the notice, there must be equitable grounds for such relief, such as fraud, mistake, surprise, or accident. . . .
>
> Equity aids the vigilant. Negligence is not favored as a ground for equitable relief, and when the lessee is able to assign no excuse for his failure to give the required notice other than his own negligence, to which the lessor in no way contributed, he is not entitled to be rescued by a court of equity from the consequences of his negligence.

200 Va. at 42-43 (citations omitted).

Then, after discussing the Connecticut case of *Fountain Co. v. Stein*, 97 Conn. 619, 118 A. 47 (1922), which held that "in cases of willful or gross negligence equity will not relieve, but in cases of mere negligence equity should relieve when the delay has been slight, the loss to the lessor small, and refusal of relief would result in such hardship to the lessee as to make literal enforcement of the contract unconscionable," 200 Va. at 44, the Court concluded:

> As observed in the *Berkow* case, *supra*, this is a broader rule than is followed by most of the courts, as appears from the cases cited in

that opinion and hereinabove, and we think it more consonant with the general principles of equity to deny relief where failure to give the notice required by the contract is due solely to the negligence of the lessee, unaccompanied by fraud, accident, mistake, or surprise, and unaffected by the conduct of the lessors. . . .

The powers of courts of equity may not be arbitrarily exercised to alter the terms of a contract understandingly made in order to relieve an unfortunate situation caused solely by the negligent failure of the party seeking relief to observe its requirements. "Hard cases must not be allowed to make bad equity any more than bad law." *Moore v. Pierson*, 6 Iowa 279, 71 Am. Dec. 409, 417. The hardship relied on to gain relief must be related to some principle within which equity moves, otherwise relief would be measured not by the contract made by the parties but by what might be considered by the court to be the exigencies of the situation in the particular case.

200 Va. at 44.

In *Sentara Enterprises v. CCP Associates*, 243 Va. 39, 413 S.E.2d 595 (1992), which is also cited by the Bank, a landlord and tenant entered into a commercial lease with an initial term of three years ending July 31, 1990. According to their agreement, the tenant had the option to renew the lease for five additional periods of three years each upon thirty-days written notice prior to the expiration of the then-current term. The tenant also had the option to buy the property if the tenant was not otherwise in default of the lease. The lease provided: "In the event Tenant fails to notify Landlord of its intention to renew, this Lease shall expire without further action by the parties." The tenant failed to give written notice of its intention to renew prior to the end of the initial term. There were, however, several exchanges of letters between the parties between August 1990 and October 1990. Generally, the landlord told the tenant that the lease had expired, that the tenant was occupying the premises without a lease, and asked if the tenant wanted to enter into a new lease. The tenant told the landlord that it wanted to renew the lease previously entered into. Finally, on October 12, 1990, the landlord wrote to the tenant and referred to the repeated notifications that the tenant was occupying the premises without a lease. The landlord advised: "We have entered into a lease with another tenant whose lease term begins January 1, 1991. We are hereby notifying you to vacate the premises on or before December 31, 1990." 243 Va. at 42. The tenant then filed a chancery action seeking injunctive relief as well as damages. The landlord filed a demurrer, answer, and "counterclaim." The demurrer generally raised the same arguments as the Bank raises here and

as prevailed *in McClellan v. Ashley, supra*. The "counterclaim" sought possession of the premises and a quantum meruit recovery of rent due for the period after the original lease term ended. The trial court sustained the demurrer, dismissed the tenant's bill of complaint, and granted possession of the premises to the landlord. The Supreme Court, extensively citing *McClellan*, affirmed.

For its part, HCA cites the case of *Selden v. Camp*, 95 Va. 527, 28 S.E. 877 (1898), to argue that the rule set out in *McClellan* and *Sentara* is not applicable to long term leases such as the one at issue here. In *Selden*, four leases were made in 1793 of land in the "Borough" of Norfolk, each for ninety-nine years, "renewable forever." Three of the leases expired on June 1, 1891, and the fourth expired on June 1, 1892. Under the leases, rent was due on June 1st of each year. If a rent payment was missed, the lessor had the right to re-enter and take possession "until all arrearages of rent are paid." Each lease provided that at the expiration of the term, so long as the lessee was in compliance with the terms of the lease, and so long as one year's "rent extraordinary" and the charges of drawing and recording the conveyance were paid by the lessee at the time of renewal, "a continuance of the lease shall be preserved forever at the expiration of the several terms 'in manner' and subject to the conditions aforesaid." 95 Va. at 528-29.[1] The mother of the then-current lessees, who had succeeded to all of the rights of the original lessee under all of the leases, had a life estate in the leases that did not expire until October 1893, which was after the original terms of all of the leases had ended. It was then that the lessees, as remaindermen, "came for the first time into the management and control of the property," and learned that the first ninety-nine year period of the leases had expired. 95 Va. at 529. They immediately employed counsel to prepare the necessary renewal deeds and have them executed, but before this was done they were served with notice to quit. The lessees filed suit for specific performance of the covenants to renew. The trial ruled in favor of the lessees and the Supreme Court affirmed.

The Supreme Court noted that the lessees, including the mother as life tenant, "were always able to comply with the terms of renewal, and that, after the notice to quit was served, they tendered the rent extraordinary with interest from the time it was due and costs of new leases, and demanded a renewal of the same, which was refused." *Id.* The Court also noted that "the annual rent and taxes, without any demand being made therefor, have always been paid

---

[1] The term "rent extraordinary" is not defined in the opinion. From the context, it apparently refers to an advance deposit of one year's rent at the beginning of each ninety-nine year term in addition to the annual rent that was also due.

by the lessees, though not always on the exact date when due; and that for several years after the expiration of the first ninety-nine-year period the rent was paid and accepted as formerly, the lessors not offering to execute a renewal of the same, nor the lessees making any demand therefor." *Id.* Addressing the lessor's argument that the prompt payment of taxes, annual rent, and one year's rent extraordinary when due were conditions precedent to the lessees' right to renew, the Supreme Court said the following:

> The only default that can be imputed to the parties asking relief in this case is the non-payment of money when due. All the annual rent and all the taxes have been paid, and the rent extraordinary was tendered and refused. The only failure of the lessees has been in point of time. They were behind in the rent a few weeks on some occasions, and several months on others when they would pay interest, and yet it was all paid without any demand therefor, and without a word of protest at receiving it from the lessors.
>
> Mere default in the payment of money at a stipulated time admits generally of compensation, and hence time of payment is seldom treated as essential in contracts in respect to real estate. That time was not of the essence of these contracts seems plain. It is not usually so considered in equity, and there is nothing in the leases to show that the parties so regarded it. On the contrary, it appears that the rent might remain in arrears six months before the lessors could exercise their right of re-entry, and could then retain possession only until the rent was paid. The course of dealing of the parties shows that they did not regard time as of the essence of the contracts, for strict payment on the day when due was not customary or required.

95 Va. at 530-31.

Then, in language that appears to be directly contrary to the of holding of *McClellan*, the Court said:

> In determining the right of the lessee to renew in this class of cases, the question to be considered is, has the party asking for relief been guilty of gross negligence, or is the default relied on the result of mere negligence. Judge Story states the doctrine thus: "When the terms of an agreement have not been strictly complied with, or are incapable of being strictly complied with, still, if there has not been gross negligence in the party, and it is conscientious that the agreement should be performed, and if compensation can be made for

any injury occasioned by the non-compliance with the strict terms, in all such cases courts of equity will interfere, and decree specific performance; for the doctrine of equity is not forfeiture but compensation, and nothing but such a decree will in such cases do entire justice between the parties." Story's Eq., sec. 775.

In *Lennon v. Napper*, 2 Sch. & Lef. 684, Lord Redesdale, in an able and instructive opinion, expressly decides that in cases like the one at bar time is not essential, and points out the distinction between the case of mere neglect, which will not exclude the party from the right of renewal, from the case of willful neglect or refusal to renew, after which a court of equity will not interfere, holding that in cases where the lessee has suffered a lapse of time from mere negligence the court will grant relief. . . .

Gross neglect on the part of the lessee would in this, as in other cases, be an insuperable bar to relief in equity. Enough has been already said, however, to show that the [lessees] have not been guilty of such laches as would, in a court of conscience, exclude them from the right to have the leases in question renewed in accordance with the provision to that end contained therein.

95 Va. at 531-32.

While at first blush it might appear proper to reject without further discussion the above language from an 1898 case in light of the holdings of the 1958 case of *McClellan* and the 1992 case of *Sentara Enterprises*, or to conclude, as the Bank argues, that "HCA ignores these bedrock principles [of *McClellan* and *Sentara Enterprises*] and instead relies on the ancient case of *Selden v. Camp*," Bank of America's Reply Memorandum at 4, *Selden's* holding cannot be so easily dismissed. In the 1949 case of *Berkow v. Hammer*, which was cited in, but not explicitly overruled by *McClellan*, and which involved a lease for a term of five years with an option to renew for an additional five-year term, the Court cited with apparent approval its holding in *Selden* and observed that under the circumstances of *Selden*, it had concluded that "time was not of the essence in long term contracts of this nature. It did not undertake to extend that rule to short term leases." Still, this court agrees with the Bank that the case at bar is controlled by *McClellan* and *Sentara Enterprises*, and not by *Selden*.

First, there was no provision in the leases in *Selden* that the lessee give written notice of renewal, either by a time certain or otherwise. The leases were renewed automatically by the payment of the annual rent, taxes, rent extraordinary, and the fees for preparing and recording the document of

renewal. Moreover, the parties in *Selden* had established a course of dealing whereby rent was routinely paid late by the lessee and routinely accepted late by the lessor. Even after the original terms of the leases had expired, the lessees continued to pay the annual rent and the lessor continued to accept it. Under those circumstances, and in spite of the Supreme Court's observation in *Berkow*, this court concludes that *Selden* does not stand for the general proposition that time is *never* of the essence in long-term leases, but only that in that particular case "the course of dealing of the parties show[ed] that they did not regard time as of the essence of the contracts, for strict payment on the day when due was not customary or required." 95 Va. at 531.

Second, while HCA in this case and the Supreme Court in *Berkow* use the terms "short term" and "long term" leases, neither HCA nor the Supreme Court states how long the term of a lease must be to fit in one category or the other. In fact, the court believes that the lease currently under consideration, and which is for an initial term of thirty years with the option to renew for three additional terms of ten years each, is much more akin to the "short term" two-year lease with the option to renew for two additional four-year terms in *McClellan*, and the "short term" three-year lease with the option to renew for five additional terms of three years each *and* with the option to purchase in *Sentara Enterprises*, than it is to the "long term" ninety-nine year lease with the option to renew forever in *Selden*. To the extent that a distinction must be drawn between short term and long term leases, the court holds that the lease at issue here is a short term one.

Third, and again in spite of the language in *Berkow* apparently recognizing a distinction between short term and long term leases based on *Selden*, a fair reading of *McClellan* and *Sentara Enterprises* leads to the inescapable conclusion that such a distinction is not generally recognized in these kinds of cases. Not only are there no references in *McClellan* and *Sentara Enterprises* to such a distinction, there is no reference in either case to *Selden* at all. In fact, *McClellan's* pointed rejection of the broader "mere negligence" rule espoused in the Connecticut case of *Fountain Co. v. Stein*, *supra*, which *Selden* explicitly adopted, is a good indication that the holding of *Selden* must be restricted to its particular facts.

Finally, while the court agrees with HCA that equity generally abhors a forfeiture, *see, e.g., Pence v. Tidewater Townsite Corp.*, 127 Va. 447, 452, 103 S.E. 694 (1920), and that equity generally will not enforce an unconscionable bargain, *see, e.g., Texas Co. v. Northup*, 154 Va. 428, 445, 153 S.E. 659 (1930), those rules cannot be applied blindly in every case. Where, as here, competent and sophisticated parties negotiated an arm's length agreement setting out the terms and obligations by which they agreed

to be bound, neither law nor equity should interfere. As the Supreme Court observed in *McClellan*, "hard cases must not be allowed to make bad equity any more than bad law." *See* quote on page 6 above. To require the Bank to renew the lease in this case would violate that principle.

The Bank of America's demurrer is sustained.