## CIRCUIT COURT OF THE CITY OF PETERSBURG

Walnut Mall Shopping Center

v.

The Grand Union Company, Inc., etc.

May 28, 1982

By JUDGE OLIVER A. POLLARD, JR.

The Stipulation of Facts, the evidence presented on March 26th, the Memoranda submitted and comments of counsel, have all been fully considered.

The following facts and circumstances have been developed. Alsage Properties, Inc., by lease agreement of June 17, 1964, leased the store building in question to Colonial Stores, Inc. In 1976 Plaintiff purchased the property from Alsage and notice of change of ownership was sent to Colonial Stores directing that all communications with respect to the lease should be addressed to "Walnut Mall Shopping Center Company, c/o The MaceRich Company," Santa Monica, California. Thereafter, in 1979, Colonial Stores was merged into the Grand Union Company, Inc.

Responsibility for lease renewal options for locations derived from the Colonial Stores merger was assumed by the office of Grand Union, located in Elmwood Park, New Jersey, in May of 1981. Certain records, including the lease on the property in question, were transferred from Norfolk, Virginia, to Elmwood Park, however, the change of ownership notice was not included. The notice sent to Colonial Stores in 1976 remained in the office of the Defendant's area real estate manager, who had been with Colonial Stores before the merger. In an attempt to give Plaintiff notice of its intention to exercise its option to renew the lease agreement, the Defendant's Elmwood

Park office, on June 16, 1981, mailed notice to Alsage Properties, Inc., as directed by the original lease agreement. The letter was returned to the Defendant by the post office at approximately noon on July 2nd, one day past the deadline for exercising the renewal option. An employee of Defendant, Mr. Burton, who first became involved at that instant, checked the computer printout on the store involved and found that "Walnut Mall Shopping Center Company" was listed as agent for the lessor. Burton immediately put through a telephone call to the number listed in Petersburg, Virginia, for Walnut Mall Shopping Center Company, and reached a Mr. Siegel, resident manager of the shopping center involved and an employee of MaceRich.

Burton advised Siegel of Defendant's prior attempt to exercise its option and its intention to exercise the option. Siegel advised Burton that Walnut Mall Shopping Center Company was, in fact, the current owner of the property, but manifested uncertainty as to whether or not he could accept the notice and further advised such matters were handled by the California office. Subsequently, Siegel notified his California office that the Defendant was attempting to exercise its option and was told to forward anything he received. Burton, on behalf of Defendant, immediately sent a confirming telegram to Plaintiff's Petersburg address and prepared a follow-up letter on July 2nd which was not posted until July 6th, and which was received by Plaintiff in Petersburg on July 8, 1981.

There seems to be no question that in Virginia, notice by lessee, in accordance with the terms of the lease agreement, is a condition precedent to the lessee's right to continue in possession of the premises. Further, that before equity may relieve a lessee of the consequences of his failure to give notice, there must be equitable grounds for such relief, such as fraud, mistake, surprise or accident. *Berkow v. Hammer*, 189 Va. 489 (1949), and *McClellan v. Ashley*, 200 Va. 38 (1958).

In its *Berkow* opinion the Supreme Court pointed out the difficulty in laying down a general rule as to when equitable relief should be granted, but that such relief would not be granted where the failure to give notice was due to wilful or gross neglect.

Lessees in both *Berkow* and *McClellan* failed to do anything towards exercising their options to renew until

after possession had been demanded by their landlords. The Court in *Berkow* found that it had not been shown that lessee would suffer any great hardship if he were denied a renewal of his lease and that his loss of his right to renew was due to his own fault. In *McClellan*, the Court found that the failure to give notice by lessee, who knew his landlord was dissatisfied, was negligence and that negligence was not a favored ground for equitable relief.

The question then is whether Grand Union's failure to send notice to MaceRich in Santa Monica, according to the lease agreement and notice of change of ownership, was a "mistake" and subject to equitable relief, or was it "negligence" that would bar such relief. Basically, negligence occurs when a person fails to use ordinary care, and a mistake occurs when a person takes a course of action based upon some erroneous conviction of law or fact. It has been said that most mistakes arise out of some degree of negligence, and it is, therefore, impossible to fix any inflexible rule to determine the amount of negligence necessary to deprive a party of relief in a Court of Equity on account of mistake. M.J., Vol. 13A, *Mistake and Accident*, Section 8.

In the case under consideration, the notice given by lessee would have been valid except for the change of ownership and notice that such communications should be sent to a different entity and address from that stated in the lease agreement. The failure of Grand Union to properly give notice was due to the absence of the notice of change of ownership in the Elmwood, New Jersey, office. It is stated in Pomeroy's Equity Jurisdiction, Volume 3, "Mistake of Fact," Section 852, "No person can be presumed to be acquainted with all matters of fact connected with a transaction in which he engages." It would seem that this doctrine is applicable in this case when one considers the merger of Colonial Stores into Grand Union, and the resulting transfer and relocation of responsibilities necessarily involving many different individuals, files, etc. The Court is of the opinion that the efforts of Grand Union's employees, under the circumstances, were within the realm of ordinary care and the failure to properly give notice by July 1, 1981, was a result of a mistake of fact that justifies equitable relief.