151 So.2d 334 (1963)
DAVID PROPERTIES, INC., a Florida corporation, Appellant,
v.
Louis G. SELK, Appellee.
No. D-469.
District Court of Appeal of Florida. First District.
March 26, 1963.
*335 L.J. Cushman, Miami, for appellant.
Nicholas A. Caputo, Holly Hill, for appellee.
ROGER J. WAYBRIGHT, Associate Judge.
This is apparently a case of first impression in the Florida appellate courts, involving certain remedies a landlord may pursue when a tenant holds over after the expiration of the term of a lease without responding to the landlord's demand that the tenant pay increased rent if the tenant continues in possession.
The parties will be referred to in the capacities in which they appeared in the circuit court from which this appeal is taken: the appellant as the defendant, the appellee as the plaintiff.
On January 18, 1957 (more than five years before this suit was filed in the circuit court), the plaintiff sold to the defendant a 320-acre tract of land in Volusia county, on which was located a small and simple dwelling. $5000 of the $50000 purchase price was presumably paid in cash. A purchase-money mortgage was executed by the defendant to the plaintiff to secure payment of the remaining $45000, payable in annual installments of $9000 each. At the time this foreclosure suit was filed, the defendant had paid four annual installments, but was several months overdue in payment of the final $9000 installment, so that the plaintiff was entitled to foreclose the mortgage. Those facts are conceded by the parties, and are not material to this controversy except as background.
After he sold the property to the defendant, the plaintiff continued to live on it. While the record is not clear on the point, that continued use of the property by the plaintiff does not seem to have been objectionable to the defendant, and may even have been agreeable to it, up to a point. The plaintiff testified that, when he sold the property, the president of the defendant corporation "says I could stay there as long as I want to." Apparently, after a time, the defendant filed an ejectment suit against the plaintiff, which resulted in the execution by the parties of a written lease agreement. *336 These developments, terminating in the lease, are also immaterial here, and are recited merely as additional background. The facts upon which the decision herein must be based are those mentioned below, beginning with execution of the lease.
On October 20, 1959, the parties executed a written lease, in which the defendant leased to the plaintiff "the house and premises heretofore occupied by him and located * * * on the following described tract of land: [describing the 320-acre tract] * * * for a term to end at midnight, December 31, 1959. The consideration for this lease is the sum of One Dollar ($1.00) the receipt of which is hereby acknowledged by the Lessor. It is expressly agreed by the Lessee that he will vacate the premises subject to this lease and turn over possession of the same to the Lessor at or prior to mid-night, December 31, 1959."
The plaintiff did not vacate by December 31, 1959, but continued to live there from January 1, 1960, until November 27, 1961, a period of almost 23 months after the date set by the lease for him to vacate the property.
On February 17, 1960, about a month and a half after the plaintiff was supposed to vacate the property, the president of the defendant corporation wrote to the plaintiff a letter (with a copy to the attorney who had represented the plaintiff at the sale three years before):
"Dear Mr. Selk:
"Upon a visible inspection of the property, I find that you are still residing thereon.
"In accordance with the terms of a lease dated October 20, 1959, it expressly stated that you would vacate the premises on or before midnight December 31, 1959.
"You are hereby instructed to vacate these premises immediately. Your continual occupation shall be at your own risk, and I shall charge rent for the use of these premises at the rate of Three Hundred ($300.00) Dollars per month.
"Please advise this office of the date of your departure so that we may make an inspection of the premises at that time.
"Upon your departure we shall expect you to leave the premises in a clean condition.
"Please govern yourself accordingly."
And a year later, on February 16, 1961, the president of the defendant corporation again wrote to the plaintiff (again with a copy to the attorney who had represented the plaintiff at the sale):
"Dear Mr. Selk:
"Upon the last two visits to the property described as Southeast 1/4 of Section 35 and Southwest 1/4 of Section 36, Township 18 South, Range 31 East, I found you still occupying these premises.
"In accordance with my letter dated February 17, 1960, I am enclosing herein an invoice for rent for the premises from January 1, 1960 through December 31, 1960, and ask that you make payment at this time for the rent, as indicated in my letter of February 17, 1960.
"If you leave the premises, please advise by return mail the date of your departure so that I may accrue the rent to the date of your departure.
"This letter shall not in any term or manner be construed as a lease, and you shall occupy this land at your own peril.
"Furthermore, you are further instructed to vacate these premises immediately, and notify this office upon the date of your departure.
"Your continuing to reside herein shall subject you to rent for the premises at the rate of $300.00 per month.
"Please govern yourself accordingly.
With the last letter was enclosed a bill for $3600 for "Rent for 320 acres described as: [legal description] For 12 months, *337 January 1, 1960 through December 31, 1960, at $300.00 per month."
The plaintiff concedes that he received both of those letters, but continued to live on the property until November 27, 1961, a period of almost 23 months after the date set by the lease for him to vacate the property, more than 21 months after he received the first letter, more than 9 months after he received the second letter.
The plaintiff offered no explanation as to why he neither vacated the property, protested against paying $300 per month rent, nor paid the rent. The record is silent on the point.
On February 14, 1962, almost a month after the final $9000 annual installment was due, the plaintiff wrote the defendant "If you wish to pay that installment, in advance, in the amount of nine thousand dollars ($9,000.00) plus interest at 4 1/2%, I will accept same." [No explanation was offered as to the use of the phrase "in advance" when referring to a payment already overdue.] The defendant replied that it was prepared to pay the $9000 balance due plus $405 interest, minus $6600 as rental due the defendant at $300 per month for 22 months, a net amount of $2805.
A few weeks later the plaintiff filed this suit to foreclose the mortgage. The defendant answered, denying that it was indebted to the plaintiff in the amount claimed because the plaintiff owed the defendant $7200 plus interest thereon as rent for the property at $300 per month beginning when that first letter of February 17, 1960, was written by the defendant to the plaintiff, and counterclaiming against the plaintiff for the $7200 plus interest at 6% per annum. The plaintiff replied to the counterclaim, denying any indebtedness for rent.
At the final hearing held before the chancellor on July 27, 1962, the defendant conceded that it owed the plaintiff the final $9000 installment plus interest, that the payment was overdue and the plaintiff was entitled to foreclose the mortgage. The defendant relied solely upon its contention that the plaintiff owed it rent for the property at the rate of $300 per month from the time it first wrote the plaintiff specifying that amount as rent, plus interest thereon, and that it was entitled to set off that rent against the indebtedness due under the mortgage.
The defendant did not claim that the plaintiff ever expressly agreed to pay that amount as rent, but contended that such an agreement was implied by law. The evidence was that the plaintiff in effect ignored those letters of the defendant, making no reply thereto, neither agreeing to pay the rent demanded, objecting to it, nor vacating the property. The plaintiff offered no reason for his failure to do neither.
The chancellor recited in his final decree that "The so-called `premises' which the Plaintiff occupied was an old shack which the Plaintiff had built with his own hands, and in which this old man (Plaintiff) and his wife lived prior to her death * * *. There was no sufficient, competent evidence from which the Court might infer that the Plaintiff occupied any of the 320 acres other than a small portion thereof upon which was located the old shack in which the Plaintiff lived * * *. [T]he evidence does not show that the Defendant was damaged by the occupation of the building, on the 320 acres, nor that the Defendant has been deprived of any income or has suffered any damage by virtue of such occupation. * * * [S]aid building was no more than a shack, had no rental value, was unsafe and uninhabitable * * *. [The defendant had no] use or plans for the use, rental or improvement of said building; that actually said building has no value for use or occupation."
The chancellor went on to recite in the final decree that "The evidence shows that the Plaintiff is an old man of approximately 83 years of age, who appeared to the Court to be obviously senile and unable to comprehend what he was doing; and that [the president of the defendant corporation] is *338 a licensed and practicing attorney and certified a public accountant in the State of Florida. This Court does not imply that the Defendant nor the said [president of defendant] was guilty of any trickery or fraud; however, if the Court held that the letters sent to the Plaintiff, demanding rent of Three Hundred Dollars ($300.00) per month, were legally and equitably sufficient to set the rental value of the premises at that figure, this Court would itself establish a trick which would almost completely dissipate the balance due this elderly Plaintiff under his note and mortgage. For the Court to so hold would have the effect of this Court operating in an atmosphere of a complete equitable vacuum."
The chancellor found against the defendant with respect to its claim for rent made in its counterclaim, and dismissed that counterclaim. The defendant appealed to this court, contending that the chancellor erred in dismissing its counterclaim.
In making those findings in the final decree, the chancellor in the main drew inferences from the evidence that, as the trier of the facts, he was entitled to draw. It should, however, be mentioned that the chancellor's recital that, at the time of the final hearing, the plaintiff "appeared to the Court to be obviously senile and unable to comprehend what he was doing" has no bearing on the matter. And the chancellor would not have been justified, on the basis solely of how the plaintiff appeared to the chancellor at the final hearing, in concluding further that the plaintiff "was an old, senile man who did not comprehend what he was doing," if by that recital the chancellor meant to imply that the plaintiff was mentally irresponsible at the time he received the two letters, for such a claim was not made in the pleadings or in the evidence.
It is assumed that the able and compassionate chancellor did not intend so to imply, but merely made such recitals in passing, without permitting them to influence his judgment, for, even if a chancellor may properly draw such conclusions solely from the appearance and conduct of a party at a brief hearing held before him, he of course cannot extrapolate that the same condition obtained two years and a half before then.
The plaintiff, who at the final hearing before the chancellor "Stipulated that the premises were occupied up until November 27th, 1961, from the 1st of January, 1960", seeks in his brief in this court to dilute that stipulation, contending that he did not mean to stipulate that the plaintiff occupied all of the 320-acre premises as distinguished from just the house and adjacent area. The context in which the stipulation was made militates against that contention, and in any event "A tenant who without the consent of his landlord retains possession of part of the premises must be considered as holding over as to all." 32 Am. Jur., Landlord and Tenant, § 921 (1941). And see 32 A.L.R.2d 582, 597 (1953). Similarly, the plaintiff cannot now say that he did not mean to stipulate that he occupied the property all of the period.
The primary question presented to the chancellor for his decision, and to this court on appeal, is whether the defendant, having written those letters to the plaintiff setting the rent at $300 per month if the plaintiff continued to live on the property, and having received no reply whatsoever from the plaintiff, who continued to live there, is entitled to that much as rent.
The defendant relies on the principle of law, heretofore apparently not expressed in a decision of any Florida appellate court but well established elsewhere, that is set forth in the annotation in 109 A.L.R. 197-220 at p. 201 (1937) in the language:
"It is quite generally held that if a landlord notifies his tenant for a fixed term that in case he holds over beyond the term he must pay a specified increased rental, the tenant will become liable for such rental if he in fact holds over, and either remains silent with reference to the notice, or fails to express his nonassent to the terms thereof."
*339 The same principle is expressed in 32 Am. Jur., Landlord and Tenant, § 950 (1941), in many other specialized texts relating to landlord and tenant, and in English and American cases therein cited.
The plaintiff takes as one of his positions that the most the defendant could possibly have claimed was the "double the monthly rent" that Florida Statutes § 83.06, F.S.A. says a landlord "may" demand of a tenant who "shall refuse to give up possession of the premises at the end of his lease." Ingeniously, the plaintiff reasons that, since the written lease under which the plaintiff held possession until December 31, 1959, provided for rent of $1 for the 70-day term, that statute prevents the defendant from claiming more rent than $2 for each 70 days of the period of almost 23 months that the plaintiff lived on the premises after the lease expired.
The plaintiff concludes that line of thought with the contention that, since the defendant did not demand double rent of the plaintiff in its letters to him, and did not allege a claim under that statute in its answer and counterclaim, the defendant cannot be awarded even that amount of rent, under the holdings in Painter v. Town of Groveland, 79 So.2d 765, 767 (S.C.Fla., 1955), and Central Florida Oil Co. v. Blue Flame, 87 So.2d 812, 814 (S.C.Fla., 1956). In that final contention the plaintiff is quite correct; those decisions so hold, and the defendant agrees.
The plaintiff then refers, for the rule as to what damages, if any, are recoverable by the defendant "in the absence of any claim for and proof of special damages and of any statutory right to double or treble damages" to 32 Am.Jur., Landlord and Tenant, § 927 (1941):
"It seems to be established that where damages may be recovered from a tenant for his failure to surrender premises, he is liable for their reasonable rental value for the time that he retains the possession; or, as it is sometimes expressed, for the fair value of the use of the premises, and in the absence of any claim for and proof of special damages and of any statutory right to double or treble damages, the reasonable rental value for the time possession is withheld, or, in other words, the reasonable value of the use of the premises, is the full measure of recovery. The reasonable rental value may be fixed at a different rate  either greater or less  from that of the rent which the tenant has been paying, although it is proper to consider the stipulated rent in determining the rental value, and it has been said that ordinarily the agreed rent would be evidence of the rental value."
The plaintiff points out that the defendant offered no evidence as to the reasonable rental value of the property, and that the chancellor found that the property had no rental value. The plaintiff argues that, consequently, the defendant is entitled to no damages.
The plaintiff and the defendant agree that no demand was made for double rent under the statute. The statute is, therefore, immaterial, for it comes into play only when such a demand is made.
The apparent conflict between the principle of law contended for by the defendant, and that urged by the plaintiff, dissolves when subjected to analysis.
As was said by the author of the annotation in 32 A.L.R.2d 582-611 at pp. 584-585 (1953):
"There is a difference, although it is not always clearly recognized, between an action for rent accrued during a period of holdover and for damages for depriving another of the use of property to which he is entitled during such period.
* * * * * *
"One situation which generally involves an action for rent as distinguished from an action for damages is *340 that in which the lessor notifies the lessee that upon holding over beyond the expiration of the lease period, the latter will be charged a higher rental. The action in such case is usually upon the implied contract.
* * * * * *
"Optionally, a landlord may treat a tenant failing to surrender possession of the leased premises as a trespasser, or he may waive the wrong occasioned by the holding over and treat him as a tenant. [In the instance of the former elected course] the action is one for damages as contrasted to rent, and seeks compensation or indemnity for the wrong occasioned."
In this case, the defendant, as the landlord, had at least several courses of action available when the plaintiff, as the tenant, continued to live on the leased property after expiration of the term of the lease. The defendant could probably have chosen to demand the "double the monthly rent" provided for by the statute; it elected not to do so, and the plaintiff could not force the defendant to do so. The defendant undoubtedly could have treated the plaintiff as a trespasser, and sued or counterclaimed against the plaintiff for damages for depriving it of reasonable rental value and any special damages; it elected not to do so, and neither the plaintiff nor the chancellor could force it to do so. The defendant also could waive the wrong occasioned by the holding over and treat the plaintiff as a tenant, demanding an increased rent of the plaintiff if the plaintiff chose to remain on the property; this the defendant elected to do, and neither the plaintiff nor the chancellor could force it to claim damages instead of rent.
When a landlord demands a different rent for continued possession of property it owns, and a tenant receives that demand and thereafter continues on in possession without protest, the tenant impliedly agrees to pay the rent demanded. Those were the facts shown by the evidence in this case, and that rule must be applied to those facts.
If the plaintiff was mentally irresponsible when the demands for rent of $300 per month were received by him, there is no slightest suggestion of it in the pleadings or the evidence. The fact that he appeared to the chancellor to be in that condition when the final hearing was held, about two years and a half after the first demand was received, could not properly form the basis of decision by the chancellor, nor can it on this appeal. No intimation is made as to what effect such a condition of the plaintiff, at the time the demands were received by him, might have, for that point is not before this court for decision.
The chancellor was sitting as a court of equity. This court is also a court of equity. That does not permit the chancellor or this court the luxury of sympathy in deciding cases; each court must follow the evidence. It is sometimes said that courts do not administer justice, but justice under law. In this day, resort may seldom be had to what in an earlier era was called natural law, a sense of what is right and what is wrong, uncontrolled by evidence or by the rules that, through centuries of development since the time of the English ecclesiastical courts, have become nearly as stratified and rigid on the equity side as on the law side. To do so would mean a government not of law but of men.
In this case, to do so would mean ignoring well established rules, on which people are entitled to rely. This court may not do so simply because one party litigant is aged, perhaps now senile, and may need money, while the other party litigant is an artificial entity headed by a lawyer and C.P.A.
There was no element of fraud or trickery here, no claim or evidence that the plaintiff was unable to comprehend the effect of the defendant's demands that he either move from the defendant's property or pay rent of $300 per month.
*341 That part of the chancellor's final decree dismissing the defendant's counterclaim for rent is reversed, with instructions to allow as a setoff against the amount due the plaintiff rent at $300 per month for the period from February 17, 1960, to November 27, 1961, plus interest thereon at the rate of 6% per year.
The only other point raised by the defendant on this appeal is its protest that there is insufficient basis in the evidence for an award to the plaintiff of an attorney's fee in any amount in connection with the foreclosure of the mortgage. The defendant points out that the plaintiff did not testify that he ever paid, or obligated himself to pay, any attorney's fee to his attorney for the attorney's services in foreclosing the mortgage, and draws our attention to Brett v. First National Bank of Marianna, 97 Fla. 284, 120 So. 554 (S.C.Fla., 1929).
At the beginning of the final hearing held before the chancellor, the attorneys for the parties engaged in a colloquy the effect of which was an agreement that an attorney's fee in some amount should be paid, but a disagreement as to the amount thereof, the plaintiff's attorney contending for $1000 and the defendant's attorney for $500. An attorney was called as an expert witness to testify on the point, and testified that $1750 would be reasonable. The chancellor set the amount at $1000 "since the attorney for the plaintiff only asked for" that amount.
True, during the examination of the witness the defendant's attorney objected that the "The necessary basis, and predicate, and foundation for testimony of this character has not been laid", but did not amplify to make it clear that he was no longer agreeing that an attorney's fee in some amount should be paid. So general an objection is virtually meaningless, particularly in the context in which it was made here; if a more specific objection had been made, the plaintiff would no doubt have promptly supplied the missing formal testimony of the plaintiff that he had agreed to pay his attorney a reasonable fee.
The chancellor had sufficient basis, in the agreement of the defendant, to conclude that a fee should be awarded, and awarded a fee lower than could have been set. No error was thereby committed.
The final decree appealed from is affirmed except as here specified. The final decree is reversed with respect to that part thereof dismissing the defendant-appellant's counterclaim for rent, and this cause is remanded to the circuit court with instructions to allow as a setoff against the amount due the plaintiff-appellee rent at $300 per month for the period from February 17, 1960, to November 27, 1961, plus interest thereon at the rate of 6% per year.
STURGIS, Acting Chief Judge, and RAWLS, J., concur.