505 So.2d 456 (1987)
FRIENDSHIP PARK PROPERTY CORPORATION, Appellant,
v.
Alma Willis SHAW, as Trustee of the Testamentary Trust of Howard W. Shaw, Appellee.
No. BK-471.
District Court of Appeal of Florida, First District.
February 10, 1987.
Rehearing Denied May 5, 1987.
Frank X. Friedmann, Jr., of Rogers, Towers, Bailey, Jones & Gay, Jacksonville and Robert P. Smith, Jr., of Hopping, Boyd, Green & Sams, Tallahassee, for appellant.
*457 Albert Datz, of Datz, Jacobson & Lembcke, Jacksonville, for appellee.
THOMPSON, Judge.
This is an appeal from a final judgment denying the plaintiff below the equitable relief it sought in a declaratory judgment action. The appellant contends, inter alia, that the trial judge erred in concluding that equity did not require a ruling that its lease be renewed. Because we find that appellant has failed to demonstrate an abuse of discretion on the part of the trial judge, we affirm.
Appellant Friendship Park Property Corporation (Friendship) is a Florida Corporation wholly owned by Fletcher Industries, Inc., another Florida corporation which is wholly owned by Jerome Fletcher and Paul Fletcher. On January 16, 1985, Friendship filed an action pursuant to Chapter 86, Florida Statutes, seeking equitable relief declaring that its lease with Shaw should have been renewed in spite of the fact that it did not timely give notice of renewal in accordance with the terms of the lease. The property described in the lease is located on the St. John's River next to the Acosta Bridge in downtown Jacksonville. A subtenant of the property presently operates the Diamondhead Restaurant on the premises but the property is suitable for further development and improvement and is very valuable business property.
Friendship is the lessee under a lease which encumbered the fee interest for an initial term of 10 years with options to renew for five 10-year periods with a final renewal period of 39 years or a maximum total term of 99 years. The lease was originally executed January 1, 1955 between Howard W. Shaw and Flossie R. Shaw, his wife, as lessors and I.D. Glickstein, as lessee. Appellee Alma Willis Shaw is trustee and successor in interest to the rights of the lessor.
Each of the six renewal options was a separate provision of the lease, and required that the lessee exercise the renewal option in writing prior to or simultaneously with the payment of the rent to be paid for the month of June in the last year of each term. The lease was assignable and authorized the subletting of the property.
Friendship became the owner of the lease in 1969 when it bought all of the stock of the Noel Corporation (Noel). Noel had become the owner of the lease by foreclosure of a mortgage on the lease given Noel by Glickstein, the original lessee, to secure a loan.
Prior to Friendship's acquisition of the lease, the buildings placed on the leased premises by Glickstein were destroyed by fire and the $75,000 proceeds from the fire insurance were deposited in an escrow fund for the purpose of reconstructing the destroyed improvements. When Friendship acquired Noel it received the $75,000 of fire insurance proceeds for the purpose of reconstructing the buildings. In 1969 Friendship invested $159,000 of its own money plus the $75,000 insurance funds in the construction of a building on the leased property, and spent $118,000 for furniture and fixtures to furnish the building which was designed as a restaurant and cocktail lounge.
Friendship immediately entered into a written sublease agreement of the premises with Someplace Else Corporation (Someplace Else). Both Friendship and Someplace Else are wholly owned by Fletcher Industries, Inc. Someplace Else operated a restaurant and cocktail lounge on the leased premises from 1970 to 1974 and paid Friendship the rentals provided for in the sublease. In 1974, an individual, Robert Smith, entered into a sublease with Someplace Else. Smith paid his rental payments to Someplace Else which, in turn, paid rent in accordance with its sublease to Friendship. In 1977, Someplace Else entered into a sublease with Diamondhead of Jacksonville (Diamondhead), the present sublessee.
The initial 10-year term of the lease expired December 31, 1964. On June 19, 1964, Noel gave written notice to the lessor that it was exercising its option to renew and extend the lease for an additional 10-year period. On June 7, 1974, Friendship gave written notice to the lessor that it was exercising its option to renew and extend the lease for the third 10-year term which *458 would expire December 31, 1984. Both prior notices to renew were in writing and were recorded in the public records of Duval County.
Although the terms of the lease required that the lessee give notice of intent to renew in writing before or simultaneously with the rental payment due June 1, 1984, Friendship did not mail its written notice of renewal to Shaw until December 26, 1984, more than six months after the lease required that notice to be given. On January 7, 1985, after Shaw had received the notice from Friendship that it was exercising its option to renew the lease, Shaw notified Friendship that she rejected the notice as untimely and demanded possession of the property.
In his order denying Friendship's request for equitable relief from forfeiture of the lease, the trial court correctly recognized the controlling Florida law as established in Dugan v. Haige, 54 So.2d 201 (Fla. 1951). See also Ledford v. Skinner, 328 So.2d 219 (Fla. 1st DCA 1976). Dugan holds that equity can relieve against the consequences of a failure to give notice which is a condition precedent to the renewal of a lease when such failure results from "accident, fraud, surprise, or mistake, and there are other special circumstances which may warrant a court of equity in granting relief against the consequences of the lessee's failure to notify the lessor, within the stipulated time, of an intention to exercise the privilege of renewal." Id. at 200. The trial court also noted that in states which permit equity to grant such relief it is a general rule that equity will intervene only if (1) the tenants delay in giving notice of renewal was slight, (2) the delay did not prejudice the landlord, and (3) failure to grant relief would cause the tenant unconscionable hardship. Friendship appeals the order arguing that Dugan authorizes the relief it seeks and that it has met the three prong test entitling it to equitable relief from forfeiture of the lease.
In its order the trial court found that there was no question but that the delay in giving notice to the landlord was a result of negligence on the part of the tenant, that the delay in giving the notice was certainly more than "slight" since it was six months and 26 days late, that during the delay, however, Shaw took no action which would create prejudice to her if the court granted equitable relief, and that the failure to grant relief would not cause the tenant unconscionable hardship. The court then indicated that if it were necessary to decide the question it would probably rule that Friendship was not entitled to equitable relief for its negligence. Dugan specifically authorizes equitable relief from a "mistake" when there are other special circumstances which warrant the granting of relief against the consequences of the lessee's failure to notify the lessor within the stipulated time. Although the failure of the lessee to timely notify the lessor may have been negligence, it obviously was also a mistake.
The court denied the equitable relief sought by Friendship because it found that Friendship failed to meet two parts of the three part test for entitlement to relief, i.e., the delay in giving the notice to renew was not slight and Friendship's loss of its lease would not result in unconscionable hardship. The finding that the delay was more than slight can hardly be contested and delay alone can be sufficient to deny equitable relief. Douglass v. Jones, 422 So.2d 352 (Fla. 5th DCA 1982). (The delay in Douglass was only five days.) Although more than "slight," the delay in the instant case would not necessarily preclude equitable relief because the delay did not prejudice the landlord. The trial court found that Friendship had met the second part of the test (that the delay did not prejudice the landlord) but also found that Friendship did not meet the third prong of the three part test (that failure to grant the relief would result in an unconscionable hardship to the lessee). The latter finding could be and was strongly contested and reasonable men, including the writer, could and would differ with the conclusion reached by the trial judge on this question. However, there is evidence in the record to support the conclusion of the trial judge. There being no reversible abuse of discretion, *459 the judgment appealed is AFFIRMED.
JOANOS, J. and THOMAS D. OAKLEY, Associate Judge, concur.