In re THRIFTY DUTCHMAN,
INC., Debtor.

THRIFTY DUTCHMAN, INC., a Florida
corporation, Plaintiff,

v.

FLORIDA SUPERMARKETS, INC., a
Florida corporation, Defendant.

Bankruptcy No. 87–02702–BKC–AJC.
Adv. No. 87–0406–BKC–AJC–A.

United States Bankruptcy Court,
S.D. Florida.

July 7, 1988.

Amended Final Judgment,
Nunc Pro Tunc
Aug. 17, 1988.

Irving M. Wolff, Rodolfo Pittaluga, Jr., Holland & Knight, Miami, Fla., for plaintiff.

Francis L. Carter, Coll, Davidson, Carter, Smith, Salter & Barkett, Lawrence Metsch, McDermott, Will & Emery, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE came to be tried on February 4, 5, and 12, 1988, upon an adversary proceeding pursuant to Part VII of the Rules of Bankruptcy Procedure and 11 U.S. C. §§ 101(50) and 548(a)(2)(A), and the Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

This Court has jurisdiction pursuant to 11 U.S.C. §§ 101(50) and 548(a), 28 U.S.C. §§ 151, 157, 1334, 2201, and 2202, and Rule 7001, *Rules of Bankruptcy Procedure.* Moreover, this matter is a core proceeding pursuant to 11 U.S.C. §§ 101(50) and 548(a) and 28 U.S.C. § 157(b)(2)(A) and (H).

## FINDINGS OF FACT

1. The Plaintiff, Thrifty Dutchman, Inc. (the "Plaintiff") and the Defendant, Florida Supermarkets, Inc. (the "Defendant"), are corporations organized and existing under the laws of the State of Florida.

2. On December 4, 1956, Alan B. Kessler and his wife, Esther Kessler (collectively, the "Kesslers'), as landlord, and the Irene Corporation, a Florida corporation, as tenant, entered into a Lease whereby the Irene Corporation leased from the Kesslers certain real property located at 3814 Curtiss Parkway, Virginia Gardens, Florida (the "Lease"). [See Plaintiff's Exhibit No. 1].

3. The Plaintiff is the successor in interest to the Kesslers' interest in the Lease by virtue of the execution and delivery of a Warranty Deed dated June 15, 1979.

4. The Defendant is the successor to the Irene Corporation's leasehold interest in the Lease having acquired same from a third party.

5. The Defendant is operating a supermarket known as Pantry Pride Store No. 239 on said premises.

6. The property involved herein consists of 19,792 square feet of building and 65,769 square feet of adjacent land.

7. At all times material hereto, the Defendant has attorned to the Plaintiff as its landlord of said premises and at no time has questioned the Plaintiff's status as the landlord.

8. Paragraph 9 of the Lease provides as follows:

"Tenant is herewith given the further option to extend the term of this lease for an additional period of five (5) years commencing upon the expiration of the first renewal period under the same terms and conditions as are herein set forth for the original term hereof, except that the annual minimum net basic rental for such five (5) year period shall be $16,401.00; if tenant decides to exercise this option, it shall give landlord written notice of its said intention not later than six months preceding the termination of the First Renewal Period. This five (5) year period is sometimes hereinafter referred to as the 'Second Renewal Period'."

9. The First Renewal Period of the Lease commenced on December 1, 1981 and expired on November 30, 1986.

10. Pursuant to the terms of the Lease, the Defendant was reserved the option to extend the Lease for a Second Renewal Period commencing December 1, 1986 and expiring on November 30, 1991.

11. The provisions of the Lease required the Defendant to provide the Plain-

tiff with written notification of its exercise of the option to extend the Lease for the Second Renewal Period by not later than May 31, 1986.

12. On May 31, 1986, the Defendant was in default of the monthly rental payments for the months of February through May, 1986, and for all months thereafter (June through November, 1986) continued to be in default of the monthly rental payments.

13. The Defendant's default in making the monthly rental payments required under the Lease was never cured, but the Defendant did attempt to cure said default only after it had commenced the State Court action.

14. The Defendant failed to timely exercise the option to extend the Lease for the Second Renewal Period.

15. The Defendant's failure to timely exercise the option and cure the defaults in rental payments terminated the Lease and the enforceability of the Lease's provision, including any and all options contained therein.

16. On September 23, 1986, the Plaintiff sent the Defendant a letter notifying the Defendant that the Lease was terminated as of December 1, 1986, on the grounds that the Defendant had failed to exercise its option to renew and extend the Lease for the Second Renewal Period. [See Plaintiff's Exhibit No. 2].

17. At a time when the rent required under the terms and conditions of the Lease had been in default, and with no legal tender thereof, on November 20, 1986, the Defendant filed a Complaint for Declaratory and Injunctive Relief (the "Complaint") with the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida (the "State Court") [Case No. 86–50066–28], and in said Complaint, as amended, the Defendant requested the State Trial Court to determine the Defendant's rights, title, and interest in and to said Lease.

18. On July 16, 1987, the State Court entered a Final Judgment granting the Defendant's request for declaratory relief (the "Final Judgment") and made the following findings

"The Court finds that although [the Defendant] Plaintiff failed to timely renew the subject lease within the time prescribed in the lease, equity will excuse the delay in giving actual notice on the grounds that the actual notice of renewal was not unreasonably late, there was no prejudice to the landlord resulting from the delay, and it is uncontroverted [the Defendant] would suffer unconscionable hardship in the event that the premises are forfeited. Accordingly, pursuant to the authority of *Dugan v. Haige*, 54 So. 2d 201 (Fla.1951) and *Friendship Park Property Corp. v. Shaw*, 505 So.2d 456 (Fla. 1st DCA 1987) the Court declares that the subject lease was and is renewed by [the Defendant] commencing December 1, 1986 and continuing through November 11, 1991 and [the Defendant] is entitled to all rights vested in it as tenant upon renewal of the lease.

It is further adjudged that [the Plaintiff] be awarded its attorney's fees in the amount of $12,500 and its costs in the amount of $250. These amounts are awarded pursuant to this Court's equity powers and the parties' stipulation.

It is further adjudged that [the Defendant] shall tendal all rent due and owing with interest calculated up to the date of tender, January 7, 1987 and tender any excess rent payable pursuant to the term of the lease."

Plaintiff's Exhibit No. 4, pp. 1–2.

19. On July 29, 1987, the Plaintiff filed with the United States Bankruptcy Court for the Southern District of Florida, a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code, and since that time has been operating the Debtor's business as a Debtor in Possession.

20. On August 14, 1987, the Plaintiff timely filed its Notice of Appeal with the State Court. [Plaintiff's Exhibit No. 5].

21. On September 1, 1987, the Plaintiff filed the Adversary Complaint for Declaratory Relief to Avoid a Fraudulent Transfer and for Damages in accordance with 11

U.S.C. § 548(a)(2)(A) and Rule 7001, *Rules of Bankruptcy Procedure.*

22. The entry of the Final Judgment constituted a "transfer" as that term is defined in 11 U.S.C. § 101(50), for which the Plaintiff received less than "reasonably equivalent value," and which also rendered the Plaintiff "insolvent" as said term is defined in 11 U.S.C. § 101(31). Because this finding is both factual and legal, the Court's reasoning in reaching said finding is more fully discussed in the text of this decision.

## CONCLUSIONS OF LAW

The facts in this Adversary Proceeding raise questions of law invoking res judicata, collateral estoppel, and whether a judicial decree can constitue an involuntary fraudulent transfer of property which is avoidable under 11 U.S.C. § 548(a)(2)(A).

### 1. *Res Judicata and Collateral Estoppel*

Throughout these proceedings, the Defendant has claimed that the State Court already dealt with the issues which are presently before this Court and that therefore, the Plaintiff is barred under the doctrine of res judicata and collateral estoppel from instituting this proceeding. This Court does not agree.

In a recent decision, the Eleventh Circuit summarized the law concerning the doctrine of res judicata and collateral estoppel to be as follows:

"Res judicata or claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or could have been litigated in an earlier suit. *See, e.g., Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); *Interstate Pipe Maintenance, Inc. v. FMC Corp.,* 775 F.2d 1495, 1497 (11th Cir. 1985). In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be iden-

tical in both suits; and (4) the same cause of action must be involved in both cases. *See, e.g., Hart v. Yamaha–Parts Distributors, Inc.,* 787 F.2d 1468, 1470 (11th Cir.1986); *Ray v. Tennessee Valley Authority,* 677 F.2d 818, 821 (11th Cir. 1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983).

Collateral estoppel or issue preclusion forecloses relitigtion of an issue of fact or law that has been litigated and decided in a prior suit. There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. See, *e.g., Greenblatt v. Drexel Burnham Lambert, Inc.,* 763 F.2d 1352, 1360 (11th Cir.1985); *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499, 1501, 1504 (11th Cir.1984), *cert. denied* [469] U.S. [1191], 105 S.Ct. 966, 83 L.Ed. 2d 970 (1985)."

*I.A. Durbin, Inc. v. Jefferson National Bank,* 793 F.2d 1541, 1549 (11th Cir.1986).

With respect to the issue of res judicata, the Plaintiff concedes that the first three elements which were enunciated in *Durbin v. Jefferson National Bank, supra,* are present in this case. However, the Plaintiff does not concede that the fourth element for the doctrine of res judicata to apply (that the same cause of action is involved in both case) is present.

As stated by the Eleventh Circuit in the *Durbin* case, *supra:*

"The principal test for determining whether the cause of action are the same is whether the primary right and duty are the same is whether the primary right and duty are the same in each case. *See, e.g., Ray,* 677 F.2d at 821; *White v. World Finance of Meridian, Inc.,* 653 F.2d 147, 150 (5th Cir. Unit A 1981). In

determining whether the causes of action are the same, a court must compare the substance of the actions, not their for. *See, e.g., Ray,* 677 F.2d at 821; *White,* 653 F.2d at 150.

*I.A. Durbin, Inc. v. Jefferson National Bank, supra,* 793 F.2d 1541 at 1549 (11th Cir.1986).

■ In applying this test to the instant case, this Court holds that the State Court action and the Adversary Proceeding pending before this Court do not involve the same cause of action. In the State Court action, the primary right at issue was the Defendant's rights and interest under the terms and conditions of the Lease. In the case at bar, the primary right at issue is whether the entry of the Final Judgment constituted an avoidable "fraudulent transfer" as that term is defined in 11 U.S.C. §§ 101(50) and 548(a)(2)(A). Since the causes of action involved in the State Court action and in this Adversary Proceeding are different, the application of res judicata is inappropriate.

■ Turning now to the issue of collateral estoppel and its applicability in this case, this Court holds that collateral estoppel is not applicable because the State Court action and the Adversary Proceeding do not involve identical issues. The issue which was before the State Court was the Defendant's rights and interest under the terms and conditions of the Lease. The issue which is before this Court is whether the entry of the Final Judgment constituted an avoidable "fraudulent transfer" as that term is defined in 11 U.S.C. §§ 101(31) and 548(a)(2)(A). Under these circumstances, this Court need not inquire as to whether the other three prerequisites to the application of collateral estoppel are present.

## 2. *Fraudulent Conveyance*

In Count I of its Complaint, the Plaintiff alleges that the Final Judgment was an involuntary fraudulent transfer which rendered the Plaintiff insolvent and is therefore avoidable by the Plaintiff under 11 U.S.C. §§ 101(50), 548(a)(2)(A) and 1107(a). Pursuant to 11 U.S.C. §§ 101(50), 548(a)(2)(A) and 1107(a), a debtor in possession

"may avoid any transfer of an interest of the debtor in property, that was made ... on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—received less than reasonably equivalent value in exchange for such transfer ... and ... became insolvent as a result of such transfer...."

Thus, for the Plaintiff to prevail, it must show that the following four elements of a "fraudulent transfer" are present:

(1) That a "transfer of an interest of the debtor in property" was made to the Defendant;

(2) That the "transfer was made ... on or within one year before the date of the filing of the petition";

(3) That the Plaintiff "received less than reasonably equivalent value in exchange for such transfer"; and

(4) That the Plaintiff "became insolvent as a result of such transfer."

*See* 11 U.S.C. §§ 548(a)(2)(A) and 1107(a); *see also In re Perdido Bay Country Club Estates, Inc.,* 23 B.R. 36 (Bkrtcy.S.D.Fla. 1982); *In re Ferris,* 415 F.Supp. 33 (W.D. Oklahoma 1976); and *Lesser v. Mendelson,* 352 F.Supp. 321 (S.D.N.Y.1971).

(a) *Transfer of an Interest of the Debtor in Property*

The first element which the Plaintiff must establish under 11 U.S.C. § 548(a)(2)(A) is that a "transfer of an interest of the debtor in property" was made to the Defendant.

The term "transfer" is defined in 11 U.S. C. § 101(50) and it defines "transfer" as follows:

"'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property [of the debtor]".

A review of the legislative history of the definition of "transfer" reveals that "(a) transfer is a disposition of an interest in property. The definition of transfer is as

broad as possible." H.Rept. No. 95–595 to accompany H.R. 8200, 95th Cong. 1st Session (1977) p. 314, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6271. "All technicality and narrowness of meaning is precluded. The word is used in its most comprehensive sense, and is intended to include every means and manner by which property can pass from the ownership and possession of another . . .," including involuntary judicial transfers. *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 444, 21 S.Ct. 906, 908–09, 45 L.Ed. 1171 (1901); *National Bank of Newport v. Herkimer Bank*, 225 U.S. 178, 184, 32 S.Ct. 633, 635, 56 L.Ed. 1042 (1912); *In re Perdido Bay Country Club Estates, Inc., supra;* and *In re Robinson*, 80 B.R. 455 (Bkrtcy.N.D.Del.1987). Thus, under 11 U.S.C. § 101(50) and its predecessors, "any transfer of an interest in property is a transfer, including a transfer of possession, custody or control even though there is no transfer of title because possession, custody, and control are interest in property. See H.Rept. No. 95–595 to accompany H.R. 8200, 95th Cong. 1st Session (1977) p. 314, U.S.Code Cong. & Admin.News 1978, p. 6271.

■ The Plaintiff herein contends that the Final Judgment resurrected an expired Lease and required the Plaintiff to involuntarily dispossess itself of its right, title, and interest in and to the immediate possession, custody, and control of the premises by being required to convey a leasehold interest in said property to the Defendant. This Court agrees.

Under Florida law, a lease terminates in several ways. One such way is upon the expiration of the lease term itself. *See Baker v. Clifford–Mathew Investment Co.*, 128 So. 827, 99 Fla. 1229 (1930). Upon the expiration of a lease term, the very terms of a lease terminate and/or expire, and the landlord's interest in the previously demised premises ripens into perfect title (which interest includes the right to immediate possession, custody, and control of the property). *See Rogers v. Martin*, 99 So. 551, 87 Fla. 204 (1924); *Baker v. Clifford–Mathew Investment Co., supra;* and *Gray v. Callahan*, 197 So. 396, 143 Fla.

673 (1940). To the extent that a lease contains an option provision for the renewal or extension of a lease, said lease and its terms may be extended for a renewed or extended period of time. However, before such an option can be exercised, the lease itself must be effective and cannot have expired or terminated. *See Douglass v. Jones*, 422 So.2d 352 (Fla. 5th DCA 1982); see *also, Matter of Racing Wheels, Inc.*, 5 B.R. 309 (Bkrtcy.M.D.Fla.1980); and *Matter of Fontaine Janitorial Supply & Services, Inc.*, 17 B.R. 322 (Bkrtcy.M.D.Fla. 1982).

The record in this case evidences that before June 1, 1986, the Defendant was required, under the terms and conditions of the Lease, to provide the Plaintiff with written notification of the Defendant's exercise of the option to extend that Lease for an additional five-year period commencing December 1, 1986 and terminating November 30, 1991; that the Defendant failed to timely renew the Lease; and that for the remaining term of the Lease (February 1, 1986—November 30, 1986), the Defendant was in arrears in paying the Plaintiff the monthly rental payments called for under the Lease. In short, the record evidences and this Court finds that the Lease terminated on November 30, 1986; that no option to renew or extend the Lease was in effect after November 30, 1986; and that after November 30, 1986, the Plaintiff was entitled to the immediate possession, custody, and control of the premises—including the right to lease said premises to another entity. *See Rogers v. Martin, supra; Baker v. Clifford–Mathew Investment Co., supra;* and *Gray v. Callahan, supra.*

Nevertheless, under the terms of the Final Judgment, the previously expired Lease was resurrected and the Plaintiff was required to involuntarily dispossess itself of said interest in possession, custody, and control of its interest in and to said property by being required to convey a leasehold interest in said premises to the Defendant. The Final Judgment was in fact the mode, method, or instrument which resurrected a previously expired Lease and which required the Plaintiff to involuntarily dispossess itself of a property interest which it

had in the property involved herein, and as such, certainly fits within the broad definition of "transfer" as that term is defined in 11 U.S.C. § 101(50). *See* H.Rept. No. 95–595 to accompany H.R. 8200, 95th Cong. 1st Session (1977) p. 314; *In re Perdido Bay Country Club Estates, Inc., supra; see also, Durrett v. Washington National Insurance Co.*, 621 F.2d 201, 204 (5th Cir. 1980).

Without conceding that it failed to timely renew the Lease, the Defendant argues that its delay in timely exercising the option to renew the Lease was not fatal to its ability and right to renew the Lease because of the "special circumstances" which are present in this case, and in support thereof relies upon and directs this Court's attention to the following cases: *Dugan v. Haige*, 54 So.2d 201 (Fla.1951); and *Friendship Park Property Corp. v. Shaw*, 505 So.2d 456 (Fla. 1st DCA 1987). Without expressing any opinion as to the validity of the State Court's Final Judgment or the merits of the Plaintiff's Appeal of that Final Judgment, this Court has reviewed the cases cited by the Defendant and finds that the Defendant's reliance thereon is misguided.

In *Friendship Park Property Corp. v. Shaw, supra,* Florida's First District Court of Appeal summarized Florida law as follows:

"... *Dugan* holds that equity can relieve against the consequences of a failure to give notice which is a condition precedent to the renewal of a lease when such failure results from 'accident, fraud, surprise, or mistake, and there are other special circumstances which may warrant the court of equity in granting relief against the consequences of the lessee's failure to notify the lessor within the stipulated time of an intention to exercise the privilege of renewal.' *Id.* at 202.... (I)t is a general rule that equity will intervene only if (1) the tenant's delay in giving notice of renewal was slight, (2) the delay did not prejudice the landlord, and (3) failure to grant relief would cause the tenant unconscionable hardship."

*Friendship Park Property Corp. v. Shaw,* Id. at 458. Thus, in order for the Defendant to prevail on this issue, the evidence must show not only that its failure to timely renew resulted from an "accident, fraud, surprise, or mistake," but that the three-prong test enunciated in *Friendship Park,* Id. has been satisfied.

The State Court specifically found and held that no Notice of Renewal was ever mailed out by the Defendant [Plaintiff's Exhibit Nos. 3, p. 79, and 4, p. 1], and no evidence to the contrary was presented by the Defendant at this trial. The Defendant's failure to give the Plaintiff written notice of its intention to renew the Lease was the result of negligence on the part of the Defendant itself. Nevertheless, for the purposes of this decision only, this Court will give the Defendant the benefit of the doubt and conclude that the Defendant's failure to give the Plaintiff written notification of its exercise of the option to renew the Lease resulted from an "accident or mistake."

However, the Defendant must still show that the three-prong test enunciated in *Friendship Park Property Corp. v. Shaw, supra,* has been satisfied. The first element of the three-prong test requires the Defendant to show that its "delay in giving notice of renewal was *slight.*" The Defendant failed to give the Plaintiff any written notice of its exercise of the option to renew the Lease. [See Plaintiff's Exhibit Nos. 3, p. 79, and 4, p. 1], and no evidence to the contrary was presented by the Defendant at this trial. Even assuming *arguendo* that this Court were to find that the Defendant's letter of October 3, 1986 to the Plaintiff (at a time when the Lease was default) constituted Defendant's written notification to the Plaintiff of its exercise of the option to renew the Lease, said letter written more than five months after the Defendant was required under the Lease to give Plaintiff such written notification can hardly be said to be "slight" under Florida law. *See Douglass v. Jones, supra* [where a five day delay in providing written notice to renew and extend a lease was held to be more than "slight"]. In view of the fact that the Defendant has failed to establish

the first element of the three-prong test enunciated in *Friendship Park Property Corp. v. Shaw, supra,* this Court need not concern itself with the other two prongs.

Accordingly, this Court finds that the Plaintiff has established the first element of an avoidable fraudulent transfer under 11 U.S.C. § 548(a)(2)(A).

### (b) *Transfer Occurred on or Within One Year Before the Date of the Filing of the Petition*

The second element of 11 U.S.C. § 548(a)(2)(A) requires that the Plaintiff establish that the "transfer" took place on or within one year before the date of the filing of the petition.

The Final Judgment constituted a "transfer" by resurrecting a previously expired Lease and by requiring the Plaintiff to convey to the Defendant a leasehold interest in the property involved herein which the Defendant did not have prior to the entry of said Final Judgment. It is undisputed that on July 29, 1987, the Plaintiff filed its Chapter 11 petition. Thus, the "transfer" took place twelve days before the filing of the petition and certainly well within one year before the date of the filing of the petition. Therefore, the Plaintiff has established the existence of the second element under 11 U.S.C. § 548(a)(2)(A).

### (c) *Receipt of "Less than Reasonably Equivalent Value in Exchange for Such Transfer"*

The third element of 11 U.S.C. § 548(a)(2)(A) requires that the Plaintiff establish that it received "less than reasonably equivalent value in exchange for such transfer."

■ The law in the Eleventh Circuit (and its predecessor, the Fifth Circuit) is that anything less than 70% of the market value is not fair or reasonable equivalent value. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (EN BANC); *Durrett v. Washington National Insurance Co., supra; In re Wheeler,* 34 B.R. 818 (Bkrtcy. N.D.Ala.1983); *In re Coleman,* 21 B.R. 832 (Bkrtcy.S.D.Texas 1982); *In re Perdido*

*Bay Country Club Estates, Inc., supra; In re Smith,* 21 B.R. 345 (Bkrtcy.M.D.Fla. 1982); *In re Thompson,* 18 B.R. 67 (Bkrtcy.E.D.Tenn.1982); *Matter of Park North Partners, Ltd.,* 72 B.R. 79 (Bkrtcy. N.D.Ga.1987); and *In re Corporate Jet Aviation, Inc.,* 57 B.R. 195 (Bkrtcy.N.D. Ga.1986).

■ The evidence before this Court revealed that in Dade County, Florida, the Defendant currently leases premises similar to those under the Lease for anywhere between $7.50 to $10.11 per square foot. Moreover, the Plaintiff's expert witness testified that on July 16, 1987, the 19,792 square feet of building involved herein had a fair market rental value of $9.00 per square foot and that pursuant to the terms and conditions of the Final Judgment, the Plaintiff was required to lease said property to the Defendants for $.83 per square foot. In light of what the Defendant is paying to rent the same type of property in Dade County, Florida, $.83 per square foot is a mere pittance, and is certainly less than 70% of the fair market rental value ($9.00 per square foot) of said premises. Accordingly, this Court holds that the Plaintiff received "less than reasonably equivalent value" in exchange for the "transfer" of July 16, 1987.

### (d) *Insolvency as a Result of Such Transfer*

■ The fourth and final element which the Plaintiff must establish under 11 U.S.C. § 548(a)(2)(A) is that the Plaintiff was or became insolvent as a result of such transfer.

The term "insolvent" is defined in 11 U.S.C. § 101(31) and it provides that an entity is "insolvent" when "the sum of such entity's debt is greater than all of such entity's property, at a fair valuation...." In short, 11 U.S.C. § 101(31) establishes a balance sheet approach to and for insolvency. *In re Perdido Bay Country Club Estates, Inc., supra.*

The record before this Court evidences that on July 15, 1987, the property involved herein was unencumbered by the Lease

and that without the Lease, the property had a value of $2,475,000 and that the Plaintiff's total assets (including said unencumbered property) and debts (as of said date) were $2,600,019.47 and $2,400,834.54, respectively. The record further evidences that on July 16, 1987, the State Court entered the Final Judgment which encumbered the property involved herein by resurrecting the previously expired Lease and that as the direct result thereof, the property (as encumbered by the Lease pursuant to the Final Judgment) had a value of $535,000 and that the Plaintiff's total assets (including said encumbered property) and debts (as of said date) were $660,019.47 and $2,400,834.54, respectively. The testimony at trial further revealed that the only event which significantly affected the Plaintiff's financial condition during the two-day period of July 15, 1987 and July 16, 1987 was the entry of the Final Judgment. Accordingly, this Court holds that the entry of the Final Judgment by the State Court rendered the Plaintiff "insolvent" as that term is defined in 11 U.S.C. § 101(31).

### 3. *Damages*

In Count II of its Complaint, the Plaintiff sets forth the monetary damages it seeks as a result of the entry of the Final Judgment and the affect thereof; to wit, the following:

1. The Plaintiff alleges that, the State Court specifically found, and this Court concludes on the basis of the evidence presented, that for the period of the lease term commencing February 1, 1986 through November 30, 1986, the Defendant did not tender to the Plaintiff the monthly rental payments of $1,491.00. At trial, the Defendant offered no evidence or testimony to the contrary. Thus, this Court holds that the Plaintiff is entitled to recover from the Defendant damages for past rent due for the period of February 1, 1986 through November 30, 1986 in the amount of $14,910.00 ($1,491.00 per month for ten months).

2. The Plaintiff alleges that under the terms and conditions of the Lease it is entitled to recover "excess rent" for the period of February 1, 1986 through November 30, 1986 in the amount of $16,315.72. The terms and conditions of the Lease authorize the Plaintiff to recover "excess rent" for said period of time. The method of calculating the "excess rent" is defined in the Lease and is set forth in the following formula: Gross Sales—[100 × (annual base rent)]. The testimony offered by the Plaintiff at trial evidenced that gross sales for the period of January 27, 1986 through December 31, 1986 amounted to $3,477,000; that the annual base rent for the year 1986 amounted to $17,892; and thus, that the "excess rent" for the period of February 1, 1986 through November 30, 1986 was $16,315.72 [$3,477,000—(100 × $17,892)]. The Defendant offered no evidence to the contrary. Therefore, this Court holds that the Plaintiff is entitled to recover from the Defendant damages for "excess rent" for the period of February 1, 1986 through November 30, 1986 in the amount of $16,315.72.

3. The Plaintiff also alleges that under Florida law it is entitled to recover from the Defendant reasonable or fair market rental value for the Defendant's use and occupancy of said premises after the expiration of the Lease (for the period December 1, 1986 through the present), plus interest thereon. This Court agrees.

Under Florida law, a landlord has several courses of action available to it when a former tenant continues to use and/or occupy the demised premises after expiration of the term of a lease. For example, the landlord may demand double rent as statutory damages under F.S. § 83.06(1), or the landlord can treat the former tenant as a trespasser and sue him for damages for deprival of reasonable rental value under F.S. § 83.07. *See David Properties, Inc. v. Selk,* 151 So.2d 334 (Fla. 1st DCA 1963); and *Nelson v. Growers Ford Tractor Co.,* 282 So.2d 664 (Fla. 4th DCA 1973).

The record before this Court evidences that the Lease terminated on November 30, 1986, and that since that time, the Defendant has been occupying said premises. The Plaintiff has made its election under F.S. § 83.07 and seeks to recover from the

Defendant the reasonable rental value of the premises (19,792 square feet of building and 65,769 square feet of adjacent land), plus interest thereon, which the Plaintiff has been denied since the Lease expired on November 30, 1986.

At trial, the Plaintiff's expert witness testified that the fair market rental value for the 19,792 square feet of building involved herein is $9.00 per square foot for a total of $178,128.00 per year or $14,844.00 per month; that the 65,769 square feet of adjacent land could be leased at $13.00 per square foot (for a total of $854,997.00 per year or $71,249.75 per month); and that the Plaintiff could realize an 11% return on the rental of said 65,769 square feet of adjacent land leased at $13.00 per square foot (for a total of $94,049.67 per year or $7,837.47 per month). Accordingly, this Court finds that the fair market rental value for all of the property involved herein (the building and adjacent land) is $272,177.67 per year ($178,128.00 + $94,049.67) or $22,681.47 per month ($14,844.00 + $7,837.47).

However, the Plaintiff in its Complaint alleged that it was entitled to recover damages from the Defendant in the amount of $295,775.00 as reasonable or fair market rental value of the property at $19,718.00 per month, plus $22,183.00 in interest thereon at 12%, for the 15 month period of December 1, 1986 through February 1, 1988. As a general rule, Courts will not grant a party monetary damages in excess of those requested. This Court adopts said general rule and holds that the Plaintiff is entitled to recover from the Defendant only those damages which it claimed; to wit, $295,775.00 as reasonable or fair market rental value of the premises, and $22,183.00 in accrued interest thereon, for the period of December 1, 1986 through December 1, 1988, and rent shall continue to accrue at the reasonable or fair market rental value of $19,718.00 per month, plus interest thereon at the rate of 1% per month, for every month that the Defendant continues in possession of said premises.

4. The Plaintiff further alleges that pursuant to the terms and conditions of the Final Judgment it is entitled to recover from the Defendant interest at the rate of 12% per year on the past due rent for the period of February 1, 1986 through November 30, 1986. The evidence presented at trial revealed that during the period of February 1, 1986 through November 30, 1986, rent was accruing on a monthly basis in the amount of $1,491.00 per month, and that the Final Judgment permitted the Plaintiff to recover interest thereon, until paid, at the rate of 12% per year. Again, the Defendant failed to present any evidence to dispute the Plaintiff's claim. Thus, this Court holds that pursuant to the terms of the Final Judgment, the Plaintiff is entitled to recover from the Defendant damages in the amount of $745.50 for interest due on the past due rent for the period of February 1, 1986 through November 30, 1986 at 1% per month.

5. The Plaintiff alleges, and it is not disputed by the Defendant, that pursuant to the terms and conditions of the Final Judgment, the Plaintiff is entitled to recover attorneys' fees in the amount of $12,500.00, court costs in the amount of $250.00, and interest thereon at the rate of 1% per month until both attorneys' fees and court costs have been paid. Thus, this Court holds that the Plaintiff is entitled to recover from the Defendant damages in the amounts of $12,500.00 and $250.00 for attorneys' fees and court costs, respectively, and interest thereon at the rate of 1% per month until both attorneys' fees and costs have been paid.

## CONCLUSION

The Plaintiff has carried its burden of establishing that the Final Judgment constituted an involuntary fraudulent transfer which is avoidable by the Plaintiff under 11 U.S.C. §§ 101(50), 548(a)(2)(A) and 1107(a). As a result thereof, the Plaintiff is entitled to the immediate possession of the property involved herein and is further entitled to recover from the Defendant damages in the total amount of $362,679.22. As is required under Rule 9021, *Rules of Bankruptcy Procedure,* a separate Judgment

will be entered. Attorneys' fees and costs may be taxed on Motion.

### AMENDED FINAL JUDGMENT, NUNC PRO TUNC

THIS adversary proceeding came on for trial before the undersigned Bankruptcy Judge, and the issues having been tried and heard, and the Court having this day entered its Findings of Fact and Conclusions of Law, and in accordance with the decision therein contained, it is hereby

ORDERED and ADJUDGED that the Plaintiff Debtor/Debtor in Possession, THRIFTY DUTCHMAN, INC., recover of the Defendant, FLORIDA SUPERMARKETS, INC., the sum of $473,417.01, together with interest thereon at the rate of 12% per annum until paid, as provided by law, for which execution shall issue. It is further

ORDERED that the remaining provisions of the Final Judgment dated July 6, 1988 are unaffected and are incorporated herein as though fully set forth.

DONE and ORDERED.